## BEXAR COUNTY ET AL V. RAY HATLEY ET AL.

No. 7816. Decided April 16, 1941.
Rehearing Overruled May 21, 1941.
(150 S. W., 2d Series, 980.)

*John R. Shook,* District Attorney, *Jay Sam Levey,* Assistant District Attorney, both of San Antonio, *Robert Ogden,* of Dallas, for plaintiffs in error, Bexar County and Automatic Voting Machine Corporations.

The commissioners court has the sole lawful right to adopt voting machines as a means of conducting public elections and is the only body authorized to determine the necessity that would warrant the adoption of such machines and to make contracts for their purchase or rental. Southland Ice Co. v. City of Temple, 100 Fed. (2d) 825; Taypayers Assn. v. Houston Ind. Sch. Dist., 81 S. W. (2d) 815.

*Moursund, Ball, Moursund & Bergstrom,* of San Antonio, for defendants in error.

The commissioners court was without authority to make the contract for the rental of voting machines for use in the county. Colonial Trust Co. v. Hill County, 294 S. W. 516 and 27 S. W. (2d) 144; McNeal v. City of Waco, 89 Texas 83, 33 S. W. 322.

*Mueller & Green,* of San Antonio, filed brief as amicus curiae.

MR. JUDGE TAYLOR, of the Commission of Appeals, delivered the opinion for the Court.

This is a case in which plaintiffs in error are seeking relief from an order of the Court of Civil Appeals directing issuance of a temporary injunction, enjoining them from paying out any money under and by virtue of the orders of the commissioners' court of Bexar County and the agreement evidenced thereby.

The commissioners' court, pursuant to the provisions of the statutes relating to the making of county budgets, on August 22, 1939, duly and regularly made and adopted its budget for the fiscal year 1939-40. Art. 689a, secs. 9 and 11, V. T. C. S.

At the time of making the budget it was contemplated that the method of holding elections in the county would be, as was then the vogue, by means of marking and counting paper ballots. Accordingly the budget contained, among numerous funds set up and appropriated for various county purposes, a fund of $16,000.00 to cover the expense of holding the elections in the county, itemized as follows:

| | |
|---|---:|
| "Judges and Clerks | $ 9,275.00 |
| Repairing booth and ballot boxes | 100.00 |
| Delivering ballot boxes | 600.00 |
| Rent chairs, tables & Supplies | 800.00 |
| Hauling election equipment | 800.00 |
| Printing, stationery, stamps | 4,200.00 |
| Advertising | 25.00 |
| School Judges and Clerks | 200.00 |
| | $16,000.00 |

Several months thereafter the commissions court (on April 25, 1940) made an order purporting to adopt voting machines for use in elections in the county, and looking to the procuring of the necessary voting machines. The part of the order relating to adoption reads (All italics herein and in this opinion ours);

"WHEREAS, it is provided by Article 2997-A, of the Revised Civil Statutes of Texas, as amended by the Acts of the Forty-fifty Legislature * * *, and * * * that the Commissoiners Court of any County * * * in its discretion adopt voting machines for use in elections in such County; and

"WHEREAS, it is deemed advisable and to the best interest of the County * * * that no more than 300 voting machines be rented * * *; and

"WHEREAS, the rental of voting machines is an expense of election and *the current budget * * * as adopted and existing, contains provisions appropriating a sufficient fund for the payment of rentals of such machines, * * *.*

"IT IS ORDERED, ADJUDGED AND DECREED by the Commissioners Court of said County THAT:

### I.

"The findings and declarations made in the preamble be, and they are, entered as a part of this order and a part of the judgment of the Commissioners Court."

The part of the order relating to the issuance of notice and receiving of bids reads in part:

"That the COUNTY JUDGE be, and he is hereby, AUTHORIZED and DIRECTED to issue such notice, and the County Auditor be, and he is hereby AUTHORIZED and DIRECTED to publish same in the time and manner prescribed by law, such notice to be read in words and figures as follows, to wit:

"A. NOTICE OF COURT'S INTENTION TO RECEIVE-
    BIDS FOR THE RENTAL AND FOR PURCHASE OF NOT
    MORE THAN 300 VOTING MACHINES, * * *.

"SEALED PROPOSALS addressed to the County Judge, Charles W. Anderson, and Commissioners Court for the rental and/or purchase of not more than * * * 300 voting machines to be used at elections to be hereafter held in said County under authority of Article 2997-A, Revised Civil Statutes, as amended * * *, will be received at the office of the County Auditor of Bexar County, at San Antonio, Texas, until 10 o'clock A. M. on the 13th day of May, 1940, and then publicly opened and read.

"Such voting machines shall be latest model new machines *and must conform in every respect to all requirements prescribed by said Article 2997-A, aforesaid, as amended,* and shall be equipped for a two-party primary.

"The proposals and/or bids for rental and/or purchase of such machines to the County shall contain provisions for renting such voting machines for a term of one year from June 1st, 1940. * * *

"A certified check or cashier's check for five per cent (5%) of each proposal to rent and/or purchase made payable without recourse to the order of Charles W. Anderson, County Judge of Bexar County, Texas, must accompany each proposal or bid as a guarantee that the bidder if successful will enter into contract and make bond in accordance with the Statute. Each bidder shall have a full size standard voting machine of the type bid upon exhibit in the Bexar County Court House at the time of the opening of the bids.

"The right is reserved by Bexar County to reject any and all proposals and to waive all technicalities. * * *.

The notice was duly published and on May 8, 1940, and pursuant thereto, a bid containing two proposals (the first for rental, the second for sale) was submitted by Automatic Voting Machine Corporation setting forth the terms of rental, as well as the terms of sale, of the requisite number of machines. The rental proposal contains, among others, the following stipulations:

"The Automatic Voting Machine Corporation further agrees that in the event the County of Bexar, Texas, elects to so purchase such voting machines and purchases same during such rental period (June 1, 1940 to June 1, 1941), in the manner provided by law, said company will credit the amount of rentals paid by the county, including the transportation charges which shall have been paid by the county, on the purchase price of such voting machines so rented."

Both proposals contain substantially the following stipulation, which is set out in the second proposal as follows:

"Upon the ward and the execution and delivery of contract to purchase voting machines by the county * * * to the Automatic Voting Machine Corporation, *we do further agree to accept for such voting machines purchased * * * as herein provided, cash in payment of the total purchase price, or in lieu of cash, and/or certificates of indebtedness or obligations other than bonds,* or bonds for not less than par on the faith and credit of said county for the purpose of paying for such voting machines and the necessary expense incident thereto. Such * * * obligations * * * if issued shall bear interest at the rate of * * * 2 1/2%, payable annually or semi-annually, and not exceeding the principal sum of * * * $305,000.00, payable serially not exceeding fifteen years from the date thereof, the maximum maturity date to be not later than 1955, and which * * * obligtaions or bonds will be paid by the levy and collection

of a continuing direct annual ad valorem tax on all taxable property in said County (out of the $.25 Constitutional General Fund Tax authorized by Section 9, Article 8 of the Constitution of Texas). Such * * * obligations * * * which may be issued * * * shall be issued in strict accordance with the Consituation and the laws of the State of Texas.

"In the event the County * * * awards contract to purchase * * * not less than * * * 210 voting machines under and by virtue of the proposal hereinabove made, we hereby offer to furnish without charge to Bexar County, * * * delivered at San Antonio, * * * for the July and August Primary elections of the Democratic Party to be held within Bexar County, * * *, in July and August, 1940, * * * 90 voting machines of the type as shall be purchased by the County; provided and except, however, that the county * * * shall agree to pay the return transportation charges of such voting machines, not exceeding * * * 90 in number and will return such voting machines, within thirty days after such primary elections, * * * to the factory of the company at Jamestown, New York, transportation charges prepaid, and the county * * * upon accepting the above proposal of sale and the use of such additional voting machines not exceeding * * * 90 in number shall agree to be responsible for the safety and good care of such voting machines * * * and the county shall further agree that if any of said machines shall in any way become damaged during such time, the county will pay for such repairs as shall be necessary to put said machines in perfect condition and to have the machines amply covered by insurance against loss.

"Any and all voting machines which shall be purchased * * * pursuant to the above mentioned proposal and including the voting machines not exceeding * * * 90 in number to be furnished by the company without charge to the county, shall be delivered on or before June 1, 1940, provided * * * there is no delay of such shipment caused by strikes, fires or other causes over which this Corporation has no control."

On May 13, 1940, the above dual proposal made by the voting machine company was filed with the county auditor and on May 17, 1940, the county, pursuant thereto, entered into a rental agreement, items first, second, ninth and tenth of which are as follows:

"First: The company hereby rents * * * 300 voting machines of its latest model current top lever, new all-metal hoist type, (here follows detailed description) for use in the elections to be held in such county during the term of one year from June

1, 1940, for the rental price of * * * $125.00 per machine for the first * * * 210 voting machines herein rented by the county, f. o. b. Jamestown, New York, and * * * 90 * * * in addition to such * * * 210 * * * at the rental price of * * * $1.00 per machine f. o. b. San Antonio, * * * such rentals to be paid in cash within * * * 120 days after the date of delivery to the county of such voting machines at the office of the company * * *. And the company further agrees to deliver such machines within 30 days from the date of this contract * * *, transportation charges prepaid, * * * and the transportation charges for the first * * * 210 * * * at $29.05 per machine, shall be added to the amount of rentals above stipulated, * * *.

"Second: The company agrees, that, should the * * * court * * * deem it to be to the best interest of such county that any number, not exceeding 300 * * * machines so rented under this contract be purchased and that the same be *purchased by such county by the county's electing so to do,* the company hereby specifies the maximum purchase price of such voting machines to be the sum of * * * each $1040.89, and * * * in the event the county * * * elects to so purchase such voting machines, *and purchases same during rental period,* * * * the company will credit the amount of rentals paid by the county, including the transportation charges which shall have been paid by the county, on the purchase price of such voting machines. The company agrees further that, upon the awarding and the execution and the delivery of a contract of purchase of such voting machines to the company by the county * * * in the manner provided by law, to accept (here follow the terms of the agreement applicable in event of subsequent acceptance of the option to purchase, which terms are in the language of the second proposal above set out) * * *."

"Ninth: The county hereby rents from the company the said 300 voting machines for use in the elections to be held in such county and for the period of one year from June 1, 1940, at the rental price of * * * $125.00 per machine for the first * * * 210 * * * rented by the county herein and further rents * * * 90 * * * machines in addition to such * * * 210 * * * at the rental price * * * $1.00 per machine, f. o. b. San Antonio, Texas, for use at elections and primary elections in such county until the commissioners court of same shall redistrict voting precincts of such county as authorized by law, provided, however, that such term of rental for such * * * additional machines shall not exceed the term of one year from June 1, 1940, such rentals to be paid in cash within * * * 120 days after the date of delivery

to the county * * * at the office of the company * * * and the county further agrees to pay the amount of transportation charges for the first * * * 210 * * * herein rental at the transportation charge of * * * $29.05 per machine to the company at Jamestown, * * *, in cash within ten days after delivery to the county * * *. It is understood and agreed by and between the parties hereto that Bexar County shall have all of the rights and privileges to lease and/or rent the voting machines herein described to any political subdivision or party of Bexar county, Texas, within the discretionary powers of the commissioners court of Bexar County, Texas, according to the laws of the State of Texas.

"Tenth: The county further agrees to be responsible for the safety and good care of the voting machines so rented during the term of this contract of rental and while same are in the possession of the county, and if any of said machines shall in any way become damaged during such time, the county agrees to pay for such repairs as shall be necessary to put said machines in perfect condition; and the county further agrees to have such voting machines amply covered by insurance; and the county agrees further that, in the event it shall not purchase said voting machines * * * it will, on or before May 31, 1941, return such * * * 300 * * * machines * * * to Automatic Voting Machine Corporation, f. o. b. cars, Jamestown, * * *, with transportation charges prepaid."

On June 5, 1940, the commissioners court passed an order amending its budget theretofore adopted so as to provide "for the rental of 300 voting machines, with an option to purchase."

On June 20, 1940, Roy O. Hatley and five other taxpayers filed suit against the county and the members of the commissioners court, and other county officials, seeking the issuance of a temporary injunction to restrain defendants from complying with the terms of the contract. Fourteen other county taxpayers intervened on the side of defendants, asserting the validity of the proceedings of the commissioners court.

Plaintiffs attached to their petition and made a part thereof copies of the series of orders and judgments of the commissioners court above referred to, including the orders containing the acceptance of the bid of the voting machine company and the contract made pursuant thereto. Following such allegations and exhibits the petition proceeds to allege, among other things, the shipment and arrival of the voting machines; that the commissioners court had undertaken to obligate the county to pay $26,340.00 as rentals for the machines and that "no

provision was contained in the current budget for the payment of said items or any of same," and that such order was void; that the language of the order purporting to adopt voting machines is not legally sufficient and that for this reason there had been "no legal adoption of voting machines" for use in the county; that in the absence of a valid order of adoption the commissioners court was without authority to enter into the contract and that for this reason, among others, the contract is void; that in any event the contract is not a contract of rental *with option to purchase* but is a contract for the *outright purchase* of the voting machines; that the provisions with reference to payment of return freight rendered the county's proposal too uncertain and indefinite.

It is unnecessary to state the allegations made upon information and belief as plaintiffs made no attempt to establish same, other than by offering in evidence their verified petition.

The concluding allegations preceding the prayer are substantially that the current budget of the company showed "an excess of contemplated expenditures over estimated revenues in an amount of many thousands of dollars," and that the order purporting to amend the budget "so as to make applicable the balance of said sum of * * * $16,000.00 budgeted for election expense is wholly void"; and that plaintiffs would suffer irreparable injury unless a temporary injunction be issued.

There are other allegations attacking the validity of the proceedings but it is not deemed necessary, in the light of holdings subsequently to be made, to enumerate them.

The county and its officials and the voting machine company each filed a general demurrer and general denial. The intervenors (members and directors of the Taxpayers Defense League, a voluntary association of taxpayers of the city who intervened on the side of the county and its officials), denied generally plaintiffs' allegations, and adopted the applicable allegations of the voting machine company. The company, in addition to its demurrer and general denial, filed a verified plea in abatement, alleging and pointing out, among other things, that it "affirmatively appears from the face of plaintiffs' petition that the copies of orders and judgments attached thereto, are in compliance with law and in no wise in violation of the constitution and laws of the state. Plaintiffs filed a verified supplemental petition to the plea in abatement denying specifically that the county had received any benefits from the transactions alleged.

The trial court, upon hearing, refused to issue the temporary

injunction prayed for. The Court of Civil Appeals reversed the order and remanded the cause, and directed issuance of a temporary injunction restraining defendants from paying out any money under the terms of the contract made between the county and voting machine company, pending a final disposition of the cause on its merits. 144 S. W. (2d) 695. Writ of error was granted upon application of defendants and interveners.

■ Did the commissioners court by its order of April 25, 1940, adopt voting machines for use in elections in the county?

Section 3 and 4 of Article 2997a (V. T. C. S., as amended) read:

"Sec. 3. The commissioners of any county in the State of Texas may adopt for use in elections and primary elections in at least three (3) of the largest voting precincts in voting strength in said county, any kind of voting machine approved by the Secretary of State and *may adopt such voting machine at any time for use in such additional voting precincts in the county as it may deem advisable,* and thereupon such voting machine shall be used at any and all elections and primary elections, municipal, county, district, or State held in that county or any part thereof, designated for voting, registering and counting votes cast at such elections and primary elections, all school and bond elections also shall be conducted by the use of voting machines in those counties or parts thereof where such machines have been adopted, where the law specifically makes their use obligatory.

"Sec. 5. The County Commissioners of a county which has adopted voting machines for that county or any portion thereof, shall as soon as practicable, and in no case later than six (6) months after adoption thereof, provide for each voting precinct designated one or more approved voting machines in completed working order, and shall thereafter preserve and keep them in repair."

The order of adoption is in substantial compliance with the foregoing statute. It would be a sacrifice of substance to form to hold the above quoted language set out in preamble and decreeing clause of the order legally insufficient to adopt voting machines for use in elections in the county, especially in view of the succeeding provisions of the order relating to the procuring of the machines for such use.

■ The next question, the determination of which will dispose of several of the subsidiary contentions of plaintiffs, is whether

the commissioners court, at the time of the filing of plaintiffs' petition seeking the issuance of a temporary injunction, was proceeding in the manner provided by law to procure voting machines for use in the county elections.

Before proceeding with an examination of this question it deemed helpful to direct attention to an additional section Article 2997a, supra, and certain provisions of Article 689a (V. T. C. S., Vol. 2, pp. 40-48).

Section 6 of Article 2997a authorizing the commissioners court to provide payment for the *rental and/or purchase* of the machines, reads:

"The County Commissioners Court shall provide for the payment of voting machines to be used in such county in such manner as the Court may deem for the best interest of the county, and for the purpose of paying for voting machines, such Commissioners Court is hereby authorized to issue bonds, and certificates of indebtedness, warrants, or other obligations to be used for this purpose and no other, which shall be a charge against the county, such bonds, certificates of indebtedness, or other obligations, may be issued with or without interest payable at such time or times as the Commissioners Court may determine, but shall never be issued nor sold for less than par; provided, however, that such Commissioners Court shall issue such bonds; certificates of indebtedness, warrants, or other obligations, to be used for the purpose of payment of voting machines in the same manner and with the same authority as provided for the issuance of warrants, bonds, certificates of indebtedness, or other obligations, by the General Laws of this State. *The necessary tax shall be set aside at the time of creating such obligation so as to meet the debt provisions of the Constitution; provided, however, that should the Commissioners Court of any county deem it for the best interest of such county, said Commissioners Court is hereby authorized to contract for the renting of voting machines by such county for use in elections for a term of not more than (2) years in any one contract of rental. Upon the expiration of such term of contract of rental such Commissioners Court may renew and/or extend same from time to time.* Such contracts shall be made only after advertising for bids in the manner provided by the General Laws controlling the purchase made by such county for county purposes, provided and except, however, *the Commissioners Court of any county is hereby authorized to accept proposals of rental and/or sale of voting machines* after advertising as provided by law wherein the rentals paid by

such county for the use of such voting machines or a part thereof may be applied on the purchase price of such machines *upon such Commissioners Court determining that it is to the best interest of such counties so to do.* Such voting machines shall be the property of the county paying for same and/or renting same, subject to the terms of the rental contract, and when used in any election or primary election, the county is not charged by law with the holding of, such machines shall be leased to the authorities charged with holding such election or primary election, and payment shall be received by the county at such lease price per machine for each election day such machines are used in an election as the Commissioners Court shall fix, but not to exceed ten (10) per cent of the original cost of such voting machine, as may be required to hold each election or primary election. The term each election or primary election as herein used, shall mean each election day such machines are used for voting purposes in such elections, and the Commissioners Court in fixing such lease price shall fix a lease price, and payment for same shall be received by the county, for each day such machines are actually used for voting in such election or primary election, and in the event a runoff election or primary runoff election is held, such lease price shall be paid to the county for each whether the same be the first election or primary election or the second and/or runoff election or second and/or runoff primary; and those charged with the holding of such election or primary election shall pay the lease price whether it be a school board, a municipality, a political party, or any other organization or authority."

Article 689a provides, secs. 1 to 8, for making the annual state budget; secs. 9 to 11, for making the county budgets of certain counties (including Bexar County) ; secs. 13 to 16, for making budgets for incorporated cities or towns; and secs. 17 and 18 for making budgets for school districts. Sections 20, the concluding section of the article reads:

"Nothing contained in this Act shall be construed as precluding the Legislature from making changes in the budget for State purposes or prevent the county commissioners court from making changes in the budget for county purposes or prevent the governing body of any incorporated city or town from making changes in the budget for city purposes, or prevent the trustees or other school governing body from making changes in the budgets for school purposes; * * *."

The applicable part of section 11 is as follows:

"*  *  * When the budget has been finally approved by the commissioners court, the budget, as approved by the court shall be filed with the clerk of the county court, and taxes levied only in accordance therewith, and no expenditures of the funds of the county shall thereafter be made except in strict compliance with the budget as adopted by the court. Except that emergency expenditures, in case of grave public necessity, to meet unusual and unforseen conditions which could not by reasonably diligent thought and attention, have been included in the original budget, may from time to time be authorized by the court as amendments to the original budget."

It will be noted in this connection that the commissioners court prior to amending its original budget had been operating the county's business for several months without necessity of amendment; that in the meantime the court deeming it for the county's best interest to use voting machines in elections, had made effective its power and duty in the premises by passing an order adopting voting machines for such purposes; and that the concluding clause of the order decrees that the original budget be so amended that the fund remaining unexpended ($15,824.84) of the $16,000.00 (itemized above) budgeted to elections in the general fund, be reallocated and expended as follows:

"Freight on *  *  * 210 voting
machines delivered to San Antonio_____ $ 6,100.00
Full coverage insurance *  *  * on *  *  *
300 voting machines _____ 350.00
Storage on *  *  * 300 voting
machines for June and July, 1940_____ 300.00
Drayage _____
Part payment on rental_____ 8,500.00
Miscellaneous expense _____ 574.34

                    Total_____$15,824.84"

In view of the facts and applicable statutes above stated and set out, did the commissioners court proceed lawfully in the matter of amending its original budget?

It should be stated preliminary to a discussion of this question that presumptions are in favor of the validity of the acts of commissioners courts and that where its orders and judgments are clear and explicit, they alone should be looked to for the intention of the court in passing same; also that mere verified pleaded conclusions and arguments, or inferences or sur-

mises, cannot prevail against the unambiguous recitals of such orders and judgments. Colonial Trust Co. v. Hill County (Com. App.), 27 S. W. (2d) 144; Anderson v. Parsley (wr. ref.), 37 S. W. (2d) 358. See in this connection Gillis v. Rosenheimer, 64 Texas 243; Emde v. Johnson (wr. ref.) 214 S. W. 575; and Johnson v. Ferguson, 55 S. W. (2d) 153. It is pointed out in this connection also that this Court recently affirmed a judgment of the Court of Civil Appeals upholding the action of the trial court in refusing an application of complaining taxpayers for temporary injunction against the local officers of a municipality to restrain them from making contemplated expenditures, on the ground that no funds were available from which such expenditures could lawfully be made. Spears v. City of South Houston (Civ. App.), 137 S. W. (2d) 197; Id. (Com. App.), 136 Texas 218, 150 S. W. (2d) 74, T. S. C. R. Vol. 9, p. 222.

It is pointed out in the opinion of the Court of Civil Appeals in the case cited that plaintiffs, "are seeking to control the city officials in the exercise of powers of government which has been intrusted to them by law," citing and quoting Mayer v. Kostes (wr. ref.) 71 S. W. (2d) 398 with respect to the drastic nature of plaintiffs' procedure in seeking the temporary injunction. In the opinion of this Court upholding the action of the trial court and Court of Civil Appeals it is stated that the judgment of the officials as to what would constitute the creation of obligations against the general fund beyond the reasonably anticipated revenues for such purpose, is a matter of judgment and that the judgment of the officials "must be controlling without hindrance until it is clearly made to appear that they are acting unlawfully or fraudulently or in abuse of their discretion."

We cannot agree with the contention of plaintiffs that the commissioners court was without authority to amend its budget.

It is apparent from the act requiring the court to adopt an annual budget for carrying on the county's business that the Legislature recognized some latitude must be allowed, within the restrictions imposed with respect to the mode of operation, to make the budget plan workable; and that a budget as originally made and adopted, because of expenditures necessitated by "unusual and unforesen conditions which could not by reasonably diligent thought and attention have been included in the original budget," might "from time to time" be amended to meet such "emergency expenditures, in case of grave public necessity." Art. 689a, secs. 11 and 20, supra.

Recurring to the question whether the commissioners court proceeded lawfully in amending its original budget it is well

to note that under our system of county government the holding therein of the elections required by law to be held, is not only a *"grave public necessity"* but is an *absolute public necessity*. Accordingly the commissioners court made provision in its original budget for expense of elections in the county in the sum of $16,000.00, so allocated, however, as to its various items (see itemization at outset of this opinion) as to cover the usual expense under the paper ballot system then in vogue.

It can hardly be said conclusively that the court was lacking in "reasonably diligent thought and attention" in not adopting voting machines for election purposes at the time it made the original budget, or that it was an abuse of their discretion to adopt them when it did so. It is fair to assume that the circumstances making it advisable and to the county's best interest to adopt voting machines, came about after the original budget had been set up and were not then forseen. The commissioners court, having authority to adopt voting machines, and having done so, had "a broad discretion to accomplish the purpose intended," so long as it observed the constitutional and statutory limitations imposed upon it. Dodson v. Marshall, 118 S. W. (2d) 621. Certainly it would be unfair to assume against the members of the court, who are presumed to have acted lawfully in the discharge of their duties, that they intended to act unlawfully.

It will be noted also that the order amending the budget did not require the expenditure of any fund not already set up for expense of elections in the county. In other words the appropriation made by the amendment was within an object (election expense) of the budget as originally adopted. The order recites that "the rental of voting machines is an expense of election," which obviously it was. The order further recites that the current budget, as adopted and then existing, contains provisions appropriating a sufficient fund for the payment of rentals of such machines, and that of the amount originally set up for election expense, $15,824.84 was then unexpended, and that such appropriation then contained "a sufficient fund for the payment of rentals of such machines," *thus judicially declaring the court's purpose to pay the rentals for the machines out of current funds provided in the budget.* The effect of the amendment was merely to provide, consistent with the budget plan provided by the Legislature, for use of the fund then available for the "election expense object" of the budget.

If no item had been set up originally to meet the expense of elections and the amendment had sought to set up and provide for a new budget object, another question would be presented,

Southland Ice Company v. City of Temple, 100 Fed. (2d) 825. In that case it is held that under the budget law "the city could not transfer funds and *apply them to a new object not mentioned in the budget. * * *."* Whether this holding is correct is not necessary to be determined in the present case, since it appears from the recitals of the orders and contract set out above that sufficient funds were available under the tax levy made on the basis of the original budget to pay the rental expense on the voting machines.

The county had been operating under the original budget for eight months at the time voting machines were adopted, and it does not appear, other than as recited in the orders and contract above referred to and set out, what the result of that operation was. While the terms of the budget law are to be complied with strictly, such compliance is subject by specific provision to the exception with respect to the emergency expenditures, such as disclosed above.

■ The court recites in its order of adoption that the funds for the payment of rentals were available. The burden was upon plaintiffs as a prerequisite to the issuance of the temporary injunction applied for, to establish they were not available. Plaintiffs' verified allegations whereby plaintiffs infer the funds are not available, do not bind the trial court as against judicial declaration of the commissioners court that they were available. In Spears v. City of South Houston, supra, this Court stresses the fact in its opinion that it was stated in defendants' answer there was in the fund called in question by plaintiffs, then available, more than sufficient "to service the outstanding bonds of the city."

Sufficient time remained (to June 1, 1941) at the time plaintiffs filed their petition seeking the issuance of a temporary injunction, in which to further amend the original budget, if necessary to use available funds for the payment of rentals. Neither had the period then expired within which the county could exercise its option to purchase the machines outright. The present contract is not void, as contended by plaintiffs for lack of definiteness in its terms. It will be noted also that section 6 of Article 2997a provides that the court "may renew and/or extend" the "contract of rental *from time to time."*

The procedure followed by the court in amending its original budget instead of paying the election expenditures out of the election funds then remaining, without amendment, was not only authorized under the circumstances of the present case, but made a proper record of the reason for the reallocation of

fund in harmony with the budget plan as set forth in the act making provision therefor. The court was authorized to amend its budget and acted lawfully in doing so.

It appears from what has been stated that we hold that since the debt sought to be created is payable out of current revenues, the contract is not void and unenforceable under the rule stated in McNeal v. City of Waco, 89 Texas 83, 33 S. W. 322, and the other cases cited by the Court of Civil Appeals in connection therewith.

Attention is directed in conclusion to Taxpayers Association v. Houston Independent School District, 81 S. W. (2d) 815, in which the Court of Civil Appeals held it lawful under the budget law for the trustees to amend the school district's budget, under circumstances not so much calculated to create a necessity for an emergency expenditure as in the present case. The judgment was permitted to stand but not necessarily upon that holding.

That part of the judgment of the Court of Civil Appeals setting aside in effect that of the trial court and directing the issuance of the temporary injunction, is reversed and set aside and judgment is here rendered affirming the interlocutory order of the trial court refusing the injunction. The part of the judgment of the Court of Civil Appeals reversing and remanding the cause, thus reformed, is affirmed.

Opinion adopted by the Supreme Court April 16, 1941.

Rehearing overruled May 21, 1941.