

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Charles A. Tosch
County Auditor
Records Building
Dallas, Texas

Dear Sir:

Opinion No. 0-3590
Re:  (1) Amendment of the Dallas
     County Budget.

     (2) Constitutionality of
     House Bill 958, Acts of the
     Forty-sixth Legislature,
     Regular Session.

We have received your request for an opinion from this department and have carefully considered the same. We quote from your request:

"The Assessor & Collector of Taxes for Dallas County has made application to the Commissioners' Court for an additional appropriation to his 'Deputies' Salary Account' of $3500.00 ($500.00 per month) for the employment of a bookkeeper and three additional deputies, whose services he represents to the Court are necessary to enable him to properly administer the 'Certificate of Title Act' as amended by H. B. No. 205, 47th Legislature, effective May, 1941, and Article 6 of the 1941 Omnibus Tax Bill, being H. B. No. 8, 47th Legislature, which levies a 1¢ tax on retail sales of motor vehicles to be collected by the County Assessor & Collector.

"Dallas County, according to the 1940 census, has a population now in excess of 350,000 inhabitants (398,049), and its officers are paid on the salary basis. In January, 1941,

in accordance with H. B. No. 958, Acts of the
46th Legislature, Regular Session, page 144
(Article 1666 of Vernon's Annotated Statutes,
Vol. 3, 1940 Accumulative Pocket Part), the
County Auditor, as Budget Officer, prepared,
and the Commissioners' Court after public hear-
ing, duly adopted a budget of all revenues and
expenditures for the calendar year 1941.  In
this adopted budget, the amount budgeted for
salaries in the Tax Assessor & Collector's of-
fice was based on the number of deputies it
was estimated would be required to administer
the tax laws as they existed in January, 1941,
and the changes in the above laws (Amendment
of Certificate of Title Act and Omnibus Tax
Bill) were not anticipated, either in respect
to the additional duties the Assessor now con-
tends are required of him by such laws, nor was
the additional income to the County allowed by
such amendment and new law anticipated and
budgeted.  Dallas County, at this time, does
not have sufficient balance of unappropriated
funds which are available for allocation to
the Salary Account of the Tax Assessor & Col-
lector's office.  It will, therefore, be nec-
essary in order to comply with the request of
the Assessor & Collector for additional appro-
priations to his Salary Account to enable him
to properly administer these laws, for the 1941
budget of Dallas County to be amended to in-
crease the budget at least $3500.00.  It is
reasonable to assume that the changes in the
Certificate of Title Law and the Automobile
Sales Tax Law will furnish to the County at
least $3500.00 of unanticipated and unappro-
priated revenue.

"The Commissioners' Court has indicated
its agreement with the Tax Assessor & Collector
in his contention that this recently enacted leg-
islation by the 47th Legislature, places addi-
tional administrative burdens upon his Depart-
ment, which would make it necessary for him to
have additional deputies to sufficiently adminis-
ter these two new laws and the Court is willing

to grant his request for the additional appropriation of $3500.00, inasmuch as it appears that the County will obtain at least this much additional and unappropriated revenue provided the 1941 budget can be legally amended to increase the same by the requested and required amount.

"It would appear from the provisions of these two new enacted laws that it was the intention of the Legislature to allow the counties administering the laws, a portion of the taxes assessed, to-wit: 25¢ for each certificate of title issued and 2% of the 1% sales tax assessed, for administrative, and not revenue purposes, and such is the argument of the Tax Assessor & Collector.

"I shall appreciate your opinion on the following:

"Can the 1941 Dallas County Budget be amended for the purposes and under the circumstances above outlined?"

Since receiving your request and during the course of our deliberation on the propositions therein expressed, we have received a related request from Honorable H. Pat Edwards, Civil District Attorney, of Dallas County, asking for our opinion on some related questions concerning the amendment of the Dallas County Budget. We have taken the liberty, at his suggestion, to answer the questions propounded, in both requests, in this opinion.

We quote from Mr. Edwards' request:

"(1)  Can the Commissioners' Court of Dallas County amend the 1941 budget duly adopted in January, 1941, in compliance with Acts of the 46th Legislature, Regular Session, House Bill No. 958, chapter 144, by passing an order at this time reducing the amount fixed by said

729

budget for payment of salaries to assistants
in the Tax Collector's office, the reason for
such reduction being the elimination of the
cost to the County of the administration of the
Certificate of Title Law as amended by House
Bill No. 205, Acts of the 47th Legislature, Reg-
ular Session?

"(2) Notwithstanding the fact that there
is no express provision in the aforesaid bud-
get law authorizing emergency expenditures
such as is found in Article 689a of Vernon's
Sales Revised Statutes (Acts of 1931, 42nd Leg-
islature, page 339, chapter 206, par. 12), does
the Commissioners' Court of Dallas County have
authority to amend its adopted budget by in-
creasing the expenditures of the county in an
amount not exceeding the anticipated revenue,
'in case of grave public necessity to meet un-
usual and unforeseen conditions which could
not, by reasonably diligent thought and atten-
tion, have been included in the original bud-
get'?

"(3) Inasmuch as it appears from the 1930
Federal census that in May, 1939, when the afore-
said budget act (Acts of 1939, 46th Legislature,
Regular Session, page 144) was passed by the
Legislature, there was only one county in the
State, to-wit, Harris County, which had a popu-
lation of 350,000 or more, and inasmuch as it
appears from the 1940 Federal census that there
are now only two counties in the State, to-wit,
Harris and Dallas County, which have a popula-
tion in excess of 350,000 and inasmuch as another
Federal census will not be taken until 1950, is
said Act unconstitutional because it applies a
classification for legislative purposes based
entirely on the population of the counties?"

According to the last Federal Census, Dallas County
has a population of 398,049 inhabitants. From your requests
it is apparent that Dallas County is operating its budgeting
of county finances under H. B. 958, Acts 46th Legislature, Reg-
ular Session. It is clear that the Act mentioned was designed

Honorable Charles A. Tosch, page 5


and intended to regulate the budgeting of county finances in
all counties having a population in excess of 350,000 inhabi-
tants according to the last preceding Federal Census.  The
budget law, referred to, makes the County Auditor the budget
officer, while under the "Uniform Budget Law," the County Judge
is budget officer for the county.  The pertinent provisions
of House Bill 958, bearing upon the amendment or change in
the budget, after it has been finally approved and adopted
by the Commissioners' Court, are as follows:

"Upon final approval of the budget by the
Commissioners' Court, a copy of such budget as
approved shall be filed with the County Auditor,
the Clerk of the Court and the State Auditor,
and no expenditure of the funds of the county
shall be thereafter made except in strict com-
pliance with said budget.  Said court may upon
proper application transfer an existing budget
surplus during the year to a budget of like kind
and fund, but no such transfer shall increase
the total of the budget. . . .

"Upon the adoption of any general or spe-
cial budget as hereinbefore provided and its
certification, the County Auditor of each County
thereupon shall open an appropriation account
for each main budgeted or special budgeted item
therein and it shall be his duty to charge all
purchase orders or requisitions, contracts, and
salary and labor allowances to said appropria-
tions. . . . The amount set aside in any bud-
get for any purchase order or requisition, con-
tract, special purpose or salary and labor ac-
count shall not be available for allocation for
any other purpose unless an  unexpended balance
remains in the account after full discharge of
the obligation or unless the requisition, con-
tract, or allocation has been cancelled in
writing by the Commissioners' Court or County
officer for a valid reason."

"The County Auditor shall make to the Com-
missioners' Court not less than monthly a complete
report showing the financial condition of the
county. . . . The report shall contain a complete

Honorable Charles A. Tosch, page 6

statement of the balances on hand at the be-
ginning and close of the month and the aggre-
gate receipts to and aggregate disbursements
from each fund, the transfers to and from each
fund, . . . ."

Section 2 of the Act repeals all laws or parts of
laws in conflict with the Act.

In considering the questions submitted by you, parts
of the "Uniform Budget Law," being H. B. No. 768, Acts 42nd
Legislature, 1931, Regular Session, page 339, and carried as
Article 869-a of Vernon's Civil Statutes, should be consider-
ed. The "Uniform Budget Law" is a general budget law appli-
cable to all public funds, with one exception. Section 12 of
the Act reads in part as follows:

"Provided, however, that in all counties
of this state containing a population in ex-
cess of three hundred fifty thousand (350,000),
according to the last preceding United States
Census, the provisions hereof shall not apply
to the making of such county budgets, and in
such counties all matters pertaining to the
county budget shall be governed by existing
law."

The "existing law" referred to above is Article 1666, Revised
Civil Statutes, 1925, which was enacted in 1905 and which pro-
vides:

"He shall prepare an estimate of all the
revenues and expenses and annually submit it
to the Commissioners' Court, which Court shall
carefully make a budget of all appropriations
to be set aside for the various expenses of
the county government in each branch and de-
partment. He shall open an account with each
appropriation in said budget, and all warrants
drawn against same shall be entered to said
account. He shall carefully keep an oversight
of same to see that the expenses of any depart-
ment do not exceed said budget appropriations,

and keep said Court advised of the conditions
of said appropriations accounts from time to
time."

The officer referred to in said Article 1666, supra, is the
County Auditor of the County.

The "Uniform Budget Law" further provides in Section
12 thereof, as follows:

"When the budget has been finally ap-
proved by the Commissioners' Court, the bud-
get, as approved, by the Court, shall be filed
with the clerk of the county court, and taxes
levied only in accordance therewith, and no
expenditure of the funds of the County shall
thereafter be made except in strict compliance
with the budget as adopted by the Court. Except
that emergency expenditures, in case of grave
public necessity, to meet unusual and unfore-
seen conditions which could not, by reasonably
diligent thought and attention, have been in-
cluded in the original budget, may from time
to time be authorized by the Court as amend-
ments to the original budget. In all cases
where such amendments to the original budget
is made, a copy of the order of the Court
amending the budget shall be filed with the
Clerk of the Court and attached to the budget
originally adopted."

Section 20-a of the "Uniform Budget Law" provides
in part as follows:

"Nothing contained in this Act shall be
construed as precluding the Legislature from
making changes in the budget for State pur-
poses or prevent the County Commissioners'
Court from making changes in the budget for
county purposes. . . ."

It can be seen from a study of House Bill 958, supra,
hereinafter referred to as the "Special Budget Law," that it
does not contain the "emergency" features of the "Uniform Bud-
get Law" providing specifically for the amendment of the bud-
get under certain circumstances.

Honorable Charles A. Tosch, page 8


The "Special Budget Law" obviously provides for the creation and establishment of a "balance sheet" of anticipated revenue and probable expenses of the county. This duty has been imposed by this Act upon the County Auditor as distinguished from the "Uniform Budget Law" which imposes the same duty upon the County Judge.

The Missouri Supreme Court in Graves v. Purcell, 85 S. W. (2d) 543, in discussing the nature of a budget said:

"We must take judicial knowledge of the fact that the word 'budget' has a well-recognized general meaning. As applied to governments or governmental units, a 'budget' is a plan or method by means of which the expenditures and revenues are so controlled for a definite period, by some budgetary authority, as to effect a balance between income and expenditures. Of course, budget laws may differ materially in their details, but the essential and characteristic features of a budget law are as stated."

The Supreme Court of Appeals of West Virginia in the case of Appalachin Electric Power Co. v. City of Huntington, 177 S. E. 431, said:

"A budget is usually nothing more than a balance sheet of estimated receipts and expenditures,. . . We think the difference between a budget and funds legally at the disposal of a fiscal body is too apparent to require extended discussion or citation of authorities."

No cases have been found construing the special budget law. There are a few Texas cases construing the "Uniform Budget Law" which we desire to discuss.

The Circuit Court of Appeals, Fifth Circuit, in the case of Southland Ice Co. v. City of Temple, 100 Fed. (2d) 825, in passing on portions of the Uniform Budget Law applicable to cities and in holding that an attempted payment for the use of a storeroom for the protection of inventories used in connection with the operation of the city water and sewerage department by the city, could not be lawfully paid, in the absence of such an item being set up in the budget, said:

Honorable Charles A. Tosch, page 9

"The city had a budget. It did not in-
clude the purchase of this property or any
storehouse. It took up all current revenues
because no taxes could be levied except in ac-
cordance with the budget. The city could not
transfer funds and apply them to a new object
not mentioned in the budget, there being no
emergency.

"Likewise subdivision 20 of the Budget
Law, authorizing changes in the budget, must
refer to changes within the objects covered
by the budget, because if new matters could
be added to the budget, then the emergency
provision would serve no purpose."

Our Commission of Appeals in the case of Bexar County,
et al v. Hatley, et al, 150 S. W. (2d) 980, had occasion to write
on the Texas Uniform Budget Law involving the action of the Com-
missioners' Court of Bexar County amending its budget, under
the emergency feature, to transfer a budgeted item for election
expenses to the rental of voting machines. Pertinent excerpts
from the court's opinion are:

"It is apparent from the Act requiring the
Court to adopt an annual budget for carrying
on the county's business that the Legislature
recognized some latitude must be allowed, with-
in the restrictions imposed with respect to
the mode of operation, to make the budget plan
workable; and that a budget as originally made
was adopted; because of expenditures necessi-
tated by 'unusual and unforeseen conditions
which could not by reasonably dilligent thought
and attention have been included in the orig-
inal budget,' might 'from time to time,' be
amended to meet such emergency expenditures,
in case of Grave public necessity." Art. 689-g,
Secs. 11 and 20, supra. "The Commissioners'
Court, having authority to adopt voting machines
and having done so, had 'a broad discretion to
accomplish the purpose intended,' so long as it
observed the constitutional and statutory limita-
tions imposed upon it. Dodson v. Marshall, 118
S.W. (2d) 621.

Honorable Charles A. Tosch, page 10


"If no item had been set up originally
to meet the expense of elections and the amend-
ment had sought to set up and provide for a new
budget object, another question would be pre-
sented, Southern Ice Co. v. City of Temple, 100
Fed. (2d) 825. In that case it is held that un-
der the budget law 'the city could not transfer
funds and apply them to a new object not men-
tioned in the budget.' . . . Whether this hold-
ing is correct is not necessary to be deter-
mined in the present case, since it appears
from the recitals of the orders and contract
set out above that sufficient funds were avail-
able under the tax levy made on the basis of
the original budget to pay the rental expense
of voting machines.

". . . While the terms of the budget law
are to be complied with strictly, such com-
pliance is subject by specific provision to the
exception with respect to the emergency expen-
ditures, such as disclosed above."

The general powers of the Commissioners' Court are
given in Dodson v. Marshall (Civ. App.) 118 S. W. (2d) 621,
(writ of error dismissed), by Judge Alexander, from which we
quote:

"The Commissioners' Court is the active
governing body of the county. Ehlinger v. Clark,
117 Tex. 547, 8 S. W. (2d) 666; Anderson v. Pars-
ley, Tex. Civ. App., 37 S. W. (2d) 358; Jerni-
gan v. Finley, 90 Tex. 205, 38 S. W. 24. While
its authority over county's business is limited
to that specifically conferred by the Constitu-
tion and statutes, Mills County v. Lampasas
County, 90 Tex. 603, 40 S. W. 403, where a right
is thus conferred or obligation is imposed, said
court has implied authority to exercise a broad
discretion to accomplish the purposes intended.
11 Tex. Jur. 565; City National Bank v. Presidio
County, (Tex. Civ. App.) 26 S. W. 775; Gussett
v. Nueces County, (Tex. Com. App.) 235 S. W.
857."

Honorable Charles A. Tosch, page 11


     With these pertinent general provisions of the law
with reference to the budget system in mind we proceed to
examine the particular questions submitted by each of you
concerning the budget of Dallas County.

     We believe the authorities have clearly established
the proposition that a new budget item may not be set up in
the budget, where the operation is under the "Uniform Budget
Law," by amendment thereto, except in case of an emergency
as therein provided. We believe the same rule of law is ap-
plicable to the special budget law, H. B. 958, supra, under
which Dallas County operates. It does not provide for any
amendment of the budget for any purpose after it has been fin-
ally adopted by the Commissioners' Court. It does provide for
the transfer of funds within the budget under certain condi-
tions. Since the Legislature is presumed to know the exist-
ing laws and the effect of their operation, such as the "Uni-
form Budget Law" which was in force and effect at the time
H. B. 958 was enacted, we believe by implication, in the ab-
sence of any provision providing for an amendment to the bud-
get even under emergency conditions, it must have been the
legislative intention that the budget in counties having 350,000
inhabitants or more should not be amended.

     We do not believe, since the Uniform Budget Law ex-
pressly exempts from its terms counties having a population
in excess of 350,000 inhabitants, that it can be looked to for
authority to authorize the amendment of the budget in counties
having more than 350,000 inhabitants.

     We realize the effect of our conclusion on this mat-
ter, however, this is a matter to be called to the attention
of the Legislature if any hardship is placed upon the adminis-
tration of county affairs.

     You are, therefore, advised that the question pre-
sented by you should be answered in the negative and that the
Dallas County Budget for the year 1941 cannot be amended for
the purposes submitted by you.

     We believe under the "special budget law" if the
Commissioners' Court finds a "valid reason" exists to termi-
nate certain salaries, then under such budget law a realloca-
tion can be made of such funds, within the budget, to other

budgeted items of like kind and fund therein contained. What constitutes a "valid reason" would depend upon the facts in each case. The Commissioners' Court is obviously given discretion to determine what constitutes a "valid reason." We think it would not be unreasonable to say that a Commissioners' Court in a proper case could make a bona fide finding of fact that by the operation and effect of law certain pre-anticipated expenses in the budget are not longer necessary to administer the duties of an officer, and thereby terminate the same. Mr. Edwards' first question is answered accordingly.

The second question submitted by Mr. Edwards should be answered in the negative for the reasons already discussed.

We now proceed to answer the third question presented by Mr. Edwards concerning the constitutionality of H. B. 958, Acts 46th Legislature.

The caption of the Act reads:

"An Act providing for a budget system in counties of three hundred and fifty thousand (350,000) inhabitants or more as shown by the last preceding or any future Federal Census, . . . ."

The emergency provision of said H. B. 958, reads:

"The fact that present laws with respect to large counties are inadequate, and an immediate necessity exists for the correction of this situation creates an emergency . . . "

In the case of Charles W. Anderson, County Judge, et al v. Woods, Sheriff, by the Supreme Court of Texas, not yet reported, Judge Alexander said in construing a similar Act:

"It will be noticed that the first sentence of Section 4 of the Act under consideration provides:

"'The provisions of this Act shall apply to all counties in this State having a popula-

Honorable Charles A. Tosch, page 13

tion of more than one hundred and twenty-five
thousand (125,000) according to the preceeding
Federal Census."

"If this were the only limitation on the
application of the Act, its validity could be
sustained as a general law on the ground that
the classification is broad enough to include
a substantial class and the necessity for a
classification on the basis employed seems to
bear some real and fair relation to the sub-
ject of the legislation. Clark v. Finley,
Comptroller, 93 Tex. 178."

In the case of Miller, et al v. County of El Paso,
et al, by the Supreme Court of Texas, not yet reported, Judge
Alexander had another bracket law under consideration. In
discussing the constitutionality of the Act he said:

"In other words, there must be a substan-
tial reason for the classification. It must
not be a mere arbitrary device resorted to for
the purpose of giving what is, in fact, a local
law the appearance of a general law." (citing
several cases).

"As said in Leonard v. Road and Maintenance
District No. 1, 187 Ark. 599, 61 S.W. (2d) 70:

"'The rule is that a classification can-
not be adopted arbitrarily upon a ground which
has no foundation in difference of situation
or circumstances of the municipalities placed
in the different classes. There must be some
reasonable relation between the situation of
municipalities classified and the purposes and
object to be attained. There must be something
* * which in some reasonable degree accounts
for the division into classes.'"

We are therefore confronted with the proposition
of whether or not the classification in H. B. 958, supra, is
based upon some real and fair relation to the subject of the

Honorable Charles A. Tesch, page 14

legislation and whether or not the classification is broad enough to include a substantial class. The most striking difference between the "Uniform Budget Law" and the budget law applicable to counties having a population of 350,000 inhabitants or more is the fact that the County Auditor, an officer appointed by the District Judges, and therefore a non-elective officer, is made the budget officer to work up the budgets for such counties. Such a program could surely be said to be wholesome. Ordinarily a man qualified under the law to be a County Auditor is a man with considerable experience and training in the administration of financial affairs. We think that this might be said to constitute a sufficient reason why the Legislature saw fit to give this officer additional duties to perform as the budgetary officer of the counties affected since the large counties have a much larger amount of business to perform and possibly harder financial conditions to solve. It will be noticed also that the Legislature found that the existing laws governing budgeting were not adequate for the large counties. Although there is some difficulty in determining the real basis for such a classification out of and from the Uniform Budget Law and the necessity for such a kind of classification we think the rule announced in the case of Wood v. Marfa Independent School District (Civ. App.) 123 S. W. (2d) 429, is applicable from which we quote:

"We recognize the principle that if the question of the reasonableness of the classification were debatable, the judgment of the Legislature would be final, but we may not close our eyes to what is clear to all men."

For the reasons discussed, we are of the opinion that said House Bill 958, supra, is constitutional.

We trust that in this manner we have fully answered your inquiries.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED AUG 18, 1941

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS

By _Harold McCracken_

Harold McCracken
Assistant

APPROVED
OPINION
COMMITTEE
BY _BWB_
CHAIRMAN

HM:db