

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN, TEXAS

:ICE DANIEL
ORNEY GENERAL

FAGAN DICKSON
FIRST ASSISTANT

September 29, 1948

Hon. F. A. Taylor
County Auditor
Brazoria County
Angleton, Texas

Opinion No. V-694

Re: Authority of Commis-
sioners' Court to amend
its budget to construct
a road and to buy land
to enlarge storage for
road machinery not in-
cluded in the original
budget.

Dear Sir:

We refer to letter in which you submit the following:

"First, under the Optional Road Law of 1947, we are operating under a strict budget system. We have a budget for road mainte-nance in the amount of $271,300.00 to be used in the upkeep of the present roads and bridges. And we also set up a road construction budget in the amount of $495,712.48. This amount for the construction budget is composed of the es-timated cost of the construction of the roads enumerated in the budget, and contingent fund of $31,274.98. The question under considera-tion now came up when the Commissioners Court instructed the Engineer to construct a road that was not on construction budget, and to pay for it out of the contingent fund. (Empha-sis added throughout this opinion)

" . . .

"Therefore I will ask you if the Commis-sioners Court has the authority to purchase the lots referred to in the inclosed letter, and to order the construction of a road not in the budget for this year, and pay for it out of the contingent fund of the construc-tion budget?"

Your reference concerning the lots is to a letter written by Hon. Sam Lee, County Attorney, to Hon. E. W. Garnett, County Engineer of Brazoria County, from which we quote:

"With reference to the lots to be purchased by the court for the purpose of storing road equipment thereon, from the facts, I believe an emergency exists. I understand that the present lots are insufficient to house the equipment and unless these adjoining lots are purchased immediately they will be sold to private interests."

An examination of a copy of the Brazoria County budget for the year 1948 in the Comptroller's Office, reveals that three items mentioned in your request appear under the general heading of Road and Bridge Fund and are listed under the specific heading of Precinct Expenditures (all precincts combined) $271,300.00 is "earmarked" for maintenance costs; $464,437.50 is "earmarked" for "48 Construction Projects" and the $31,274.98 is "earmarked" for contingencies. According to the budget $464,437.50 is to be used for 48 road projects without naming, identifying, or describing any of said projects within the budget. But from the County Judge, County Attorney, County Auditor, and County Engineer we learned that even though the 48 road construction projects were not named within the 1948 budget, the Commissioners' Court had specifically designated the 48 projects on which the above money would be used; and in addition thereto, it specified the exact amount that would be expended on each of said projects.

Although this contingency is just as much an appropriation for road and bridge purposes as the appropriations for maintenance and construction costs, so long as the money is "earmarked" for "contingencies" it can only be used for items which will necessarily arise during the budget year but which cannot appropriately be classified under any of the specific purposes set out elsewhere in the budget. First National Bank of Norman v. City of Norman, 75 P.(2d) 1109. A contingent fund is set up for minor disbursements incidental to the principal classes of expenditures, enumerated in the budget, which would be useless to specify more accurately. Dunwoody v. United States, 22 Court of Claims Reports, 269.

Applying the above principles to the instant

case, it is our opinion that the cost of constructing a road not specified in the original budget could not be paid for directly out of the contingent appropriation of the road and bridge fund without first amending the county budget provided for in Articles 689a-9-10-11-12 and 20, V. C. S. The question for our determination therefore is whether the Commissioners' Court of Brazoria County has the authority to amend its budget so as to include the road construction now under consideration.

In the case of Dancy v. Davidson, 183 S. W.(2d) 195, writ refused, the court had under consideration the authority of the Commissioners' Court to purchase a certain building which was not provided for in the budget. The trial court granted an injunction prohibiting the Commissioners' Court from buying the property. The Court of Civil Appeals held that no sufficient order had been made to authorize the purchase but modified the injunction so as to permit the Commissioners' Court to appropriately amend the budget to provide funds for such purchase. We quote the following from said case at page 201:

"... Appellants construe the injunction issued as prohibiting the purchase of the building even though the budget law be complied with by appropriate action in the future. The decree itself seems to be limited to the order of April 29, 1944, which, as above pointed out, is insufficient in itself, under the budget law, to authorize the paying out of public funds. However, in order to remove all doubt as to the construction or effect of the decree the same will be reformed so as to restrain Cameron County and its Commissioners' Court from paying to Mrs. Jennie B. Bell any sum of public monies under the order of April 29, 1944, standing alone, without prejudice however, to such other and further actions as may be taken by said County and its Commissioners' Court with reference to the proposed purchase of the building involved. . ."

In the case of Bexar County v. Hatley, 136 Tex. 354, 150 S.W.(2d) 980, the Supreme Court had under consideration the authority of the Commissioners' Court to amend its county budget which originally contained, among numerous funds set up and appropriated for various coun-

ty purposes, a fund of $16,000.00 to cover the expense of holding elections in the county. Such fund was itemized as follows:

> "Judges and Clerks                    $ 9,275.00
> Repairing booths and
>   ballot boxes                             100.00
> Delivering ballot boxes                    600.00
> Rent chairs, tables & supplies             800.00
> Hauling election equipment                 800.00
> Printing, stationery, stamps             4,200.00
> Advertising                                 25.00
> School Judges and Clerks                   200.00
>                                   $ 16,000.00"

The Commissioners' Court passed an order amending its budget so as to provide for the rental of three hundred voting machines with an option to purchase, and the order decreed that the original budget "be so amended that the fund remaining unexpended ($15,824.84) of the $16,-000.00 (itemized above) budgeted to elections in the general fund, be reallocated and expended as follows:

> "Freight on * * * 210 voting
>   machines delivered to San
>   Antonio                      $ 6,100.00
> Full coverage insurance * * *
>   on * * * 300 voting
>   machines                          350.00
> Storage on * * * 300 voting
>   machines for June and
>   July, 1940                        300.00
> Drayage                            . . .
> Part payment on rental           8,500.00
> Miscellaneous expense              574.34
>
>       Total                 $ 15,824.84"

The Supreme Court in holding that the Commissioners' Court had the authority to expend county money for the rental of voting machines after amendment of the budget as pointed out above made the following observation:

> "We cannot agree with the contention of plaintiffs that the commissioners' court was without authority to amend its budget.
>
> "It is apparent from the act requiring

Hon. F. A. Taylor, page 5 (V-694)          493

the court to adopt an annual budget for carry-
ing on the county's business that the legis-
lature recognized some latitude must be allow-
ed, within the restrictions imposed with res-
pect to the mode of operation, to make the budg-
get plan workable; and that a budget as ori-
ginally made and adopted, because of expendi-
tures necessitated by 'unusual and unforeseen
conditions which could not, by reasonably dili-
gent thought and attention, have been includ-
ed in the original budget' might 'from time to
time' be amended to meet such 'emergency ex-
penditures, in case of grave public necessity.'
Arts. 689a-11, 689a-20, supra.

"...

"It can hardly be said conclusively that
the court was lacking in 'reasonably diligent
thought and attention' in not adopting vot-
ing machines for election purposes at the time
it made the original budget, or that it was
an abuse of their discretion to adopt them
when it did so. It is fair to assume that the
circumstances making it advisable and to the
county's best interest to adopt voting ma-
chines came about after the original budget
had been set up and were not then foreseen.
The commissioners' court, having authority
to adopt voting machines, and having done so,
had 'a broad discretion to accomplish the
purposes intended,' so long as it observed
the constitutional and statutory limitations
imposed upon it. Dodson v. Marshall, Tex.
Civ. App., 118 S.W.2d 621, 623. Certainly
it would be unfair to assume against the mem-
bers of the court, who are presumed to have
acted lawfully in the discharge of their
duties, that they intended to act unlawfully.

"It will be noted also that the order
amending the budget did not require the ex-
penditure of any fund not already set up for
expense of elections in the county. In other
words, the appropriation made by the amend-
ment was within an object (election expense)
of the budget as originally adopted."

In view of the foregoing, we are of the opin-

ion that if the Commissioners' Court determines that a necessity exists for the construction of a road not provided for in the budget, said court may amend the budget as provided in Article 689a-11 to allocate money from the unencumbered Contingent Fund for the construction of such road.

Also, you inquire as to whether the Commissioners' Court may purchase certain lots for the purpose of storing road and bridge equipment thereon and pay for the same out of the Contingent Fund within the Road and Bridge Fund. The Attorneys General of Texas have consistently held that purchases of this kind may only be paid for out of the Permanent Improvement Fund of the county. Therefore, it is our opinion that the lots in question may not be purchased and paid for out of the Contingent Fund of the Road and Bridge Fund.

We are enclosing copies of Opinions Nos. O-3286 and O-7423 rendered by a prior administration, which adequately answer your second question.

## SUMMARY

Any unencumbered portion of the Contingent Fund of the Road and Bridge Fund of Brazoria County may be allocated by the Commissioners' Court for the purpose of constructing road projects not specifically mentioned in the 1948 budget by amendment of the budget as provided in Article 689a-11, V. C. S.

The Contingent Fund of the Road and Bridge Fund may not be used by the Commissioners' Court for the purpose of purchasing lots for storing road and bridge equipment; said purchase may only be made out of the Permanent Improvement Fund of the county, which may be provided by amendment of the budget if there is available money in such fund.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By W. T. Williams
Assistant

John Reeves
Assistant

APPROVED:

Fagan Dickson
FIRST ASSISTANT
ATTORNEY GENERAL

WTW:JR:wb:mw