# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

**NO. 03-07-00386-CV**

**Stop The Ordinances Please; WWGAF, Inc. d/b/a/ Rockin "R" River Rides; Texas Tubes; Corner Tubes; Gruene Home Run Batting Cages & Tubing; and Stone Randall Williams, Appellants**

**v.**

**City of New Braunfels, Texas, Appellee**

**FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT NO. C2007-0387B, HONORABLE RONALD G. CARR, JUDGE PRESIDING**

## O P I N I O N

Appellants Stop The Ordinances Please (STOP); WWGAF, Inc., d/b/a Rockin "R" River Rides; Texas Tubes; Corner Tubes; Gruene Home Run Batting Cages & Tubing; and Stone Randall Williams appeal a district court judgment dismissing, for lack of standing, declaratory and injunctive relief claims they asserted against the City of New Braunfels (the City) challenging certain municipal ordinances. Concluding that the district court properly dismissed some of appellants' claims but erred in dismissing others, we will affirm the judgment in part and reverse and remand in part.

## BACKGROUND

Within the City's municipal boundaries flow two public waterways—the Guadalupe River, on its path from the Texas Hill Country to the Gulf of Mexico, and a tributary to

the Guadalupe, the spring-fed Comal River, the entire expanse of which is located within city limits. Especially during the hotter months, these rivers' refreshing cool waters and scenic beauty have long attracted thousands of "tubers" from throughout Texas to visit the New Braunfels area and delight in floating lazily downstream on inner tubes or other flotation devices.

It has not been unknown for many tubers to enjoy alcoholic beverages while floating along. For several years, some New Braunfels residents (including riverside residential property owners) and some local officials have complained that tubers, often fueled by excessive amounts of alcohol, have engaged in behaviors detrimental to the rivers and surrounding land, not to mention the ability of others to quietly enjoy these areas. Complaints have included public lewdness, nudity, urination and defecation; littering; staggering or debilitating drunkenness; and life-threatening stunt-jumping into the water from bridges and the like. These residents and officials have advocated—in addition to reliance on already-strained local law enforcement resources—various state or local regulatory actions to combat factors they perceive as contributing to these developments.[1] Generally opposed to these sorts of initiatives (and disputing the degree to which the alleged problems to which the initiatives are directed exist) have been a number of local businesses that earn revenue from tubers (and/or their alcoholic-beverage consumption). Among these are outfitters who earn revenue from renting inner tubes and providing shuttle services between entry and exit points along the rivers.

[1] These efforts have included an unsuccessful effort to persuade the alcoholic beverage commission to designate the two rivers a "central business district" in which open alcohol containers could be prohibited. *See* Tex. Alco. Bev. Code Ann. § 109.35 (West 2007).

In 2006 and 2007, the New Braunfels City Council enacted the following four ordinances:

- ***The "Beer Bong" Ordinance.*** Finding that "volume drinking devices propose certain health, safety, and welfare hazards," the Council enacted a citywide prohibition against the use or possession of "volume drinking devices" in public places within the City. The ordinance defines "volume drinking devices" as "an object used, intended for use or designed for use in artificially increasing the speed with which, and/or amount of, alcohol is ingested into the human body by carrying the liquid from a higher location into the mouth by force of gravity or mechanical means, including but not limited to funnels, tubes and hoses." This prohibition explicitly includes "a beer bong."

- ***The Five -Ounce Container Ordinance.*** Finding that "[t]he use of containers with a volume of 5 fluid ounces or less on waterways within the City has created a public nuisance by increasing litter and interfering with the public's enjoyment of parks, waterways, and public spaces," the Council enacted a prohibition against the use, carrying, possession, or disposal of an "open container" with a volume capacity of five fluid ounces or less in the public waters of the portions of the Guadalupe River, Lake Dunlap (a reservoir on the Guadalupe), or Comal River that lie within the city limits. "Open container" is defined as "a bottle, can, or other receptacle that is open, that has been opened, that has a broken seal, or the contents of which are fully or partially removed."

- ***The Parks Ordinance.*** Based on recommendations of a Council-appointed "River Activities Committee" and the City's Parks and Recreation Advisory Board, and "to protect the health, safety and welfare of the citizens and visitors to New Braunfels," Council enacted a prohibition against the consumption of alcoholic beverages or possession of an open container of same within the boundaries of seventeen public parks and city-owned properties within the city limits. Some, but not all, of these properties are located along the Comal or Guadalupe and provide access for tubing. In one park, Prince Solms Park, the City rents tubes.

- ***The Cooler & Container Ordinance.*** Following another recommendation of the River Activities Committee, which advocated the limitation "in order to decrease litter, minimize public nuisances and interference with the public's enjoyment of parks, waterways and public spaces; and preserve the pristine nature of the waterways," Council enacted a prohibition against the use, carrying, possession, or disposal of a "cooler" ("a receptacle or apparatus capable of cooling or keeping cold food and drinks and which carry more than one container") with a capacity exceeding sixteen quarts on or in the public waters of the portions of the Guadalupe and Comal Rivers that lie within the city limits. The ordinance further limits each person to one cooler and requires that any cooler be secured by a zipper, Velcro

> snap, mechanical latch, or bungee cord to prevent the contents of the cooler from falling out of the cooler. It also prohibits the use, carrying, or possession of containers constructed of glass or Styrofoam.

In response to these ordinances, STOP, which alleged it was "an unincorporated association of business owners and other parties interested in the use and enjoyment of the Comal and Guadalupe Rivers which flow within the corporate city limits of the City of New Braunfels," sued the City under the Uniform Declaratory Judgments Act[2] seeking declaratory and injunctive relief to restrain enforcement of the ordinances. Characterizing the ordinances as merely an attempt to regulate alcohol consumption on the rivers, STOP sought declarations that the ordinances and the City's actions exceeded the City's authority by attempting to regulate matters preempted by State authority under the alcoholic beverage code. *See* Tex. Alco. Bev. Code Ann. § 1.06 (West 2007) ("Unless otherwise specifically provided by the terms of this code, the manufacture, sale, distribution, transportation, and possession of alcoholic beverages shall be governed exclusively by this code."). In the alternative, STOP also sought a declaration that the Five-Ounce Container Ordinance (which it terms the "Jell-O-Shot Ordinance" to emphasize the ordinance's perceived connection to alcohol regulation) and Cooler & Container Ordinance, each of which contain language about litter control, violate section 361.0961 of the health and safety code. *See* Tex. Health & Safety Code Ann. § 361.0961 (West 2001) ("A local government or other political subdivision may not adopt an ordinance, rule, or regulation to: . . . prohibit or restrict, for

---

[2] *See* Uniform Declaratory Judgments Act (UDJA), Tex. Civ. Prac. & Rem. Code Ann. §§ 37.01-.011 (West 2008).

solid waste management purposes, the sale or use of a container or package in a manner not authorized by state law . . . .").

The City responded with a plea to the jurisdiction challenging whether STOP had sufficiently pled its standing to prosecute its claims. Following a hearing at which only argument was presented, the district court granted the plea, then later vacated its order to afford STOP the opportunity to replead. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004) (plaintiff should be afforded opportunity to amend if pleadings do not contain sufficient facts to affirmatively demonstrate trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction). The court set a deadline for STOP to replead and scheduled a hearing thereafter. In advance of the hearing, STOP amended its petition twice. In its live pleading (its third amended petition), STOP joined five individual plaintiffs whom it alleges are among its members (collectively, Appellants). Four individual plaintiffs are outfitters engaged in the business of renting tubes and ice chests for use on the Comal and Guadalupe Rivers—Rockin "R" River Rides, Texas Tubes, Corner Tubes, and Gruene Home Run Batting Cages & Tubing (collectively, the "Outfitter Plaintiffs"). The fifth individual plaintiff, Stone Randall Williams, alleges that he received a citation for a violation of the Cooler & Container Ordinance while tubing on the Comal within New Braunfels city limits.[3]

[3] Another individual plaintiff joining the suit, Lindsay Michelle Crim, alleged she had been cited for violating the Parks Ordinance while tubing on the Comal. Crim, however, did not file a notice of appeal. Still more individual plaintiffs joined in Appellants' second amended petition but were nonsuited by omission in Appellants' third amended petition.

Appellants also added new allegations and claims. They alleged that the four challenged ordinances, by exceeding the City's statutory powers, violated article XI, section 5 of the Texas Constitution. *See* Tex. Const. art. XI, § 5 ("[N]o charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State."). Further, in addition to the claims previously asserted by STOP, Appellants sought declarations that the Comal and Guadalupe as they flow through the City are "navigable streams" whose waters and riverbeds are owned by the State and held in trust for the people of the State, and that the City "may not exert its police powers against the State of Texas or on the state-owned property consisting of the water and riverbeds of the Comal and Guadalupe Rivers as they flow through the City." Finally, Appellants sought a declaration that a 2001 ordinance under which the City had imposed a "river management fee" on the Outfitter Plaintiffs was "illegal and unconstitutional."

The City did not dispute the Outfitter Plaintiffs' standing to challenge the river-management fee, but asserted that Appellants had not demonstrated standing to assert any of their other claims. Following the hearing, at which only argument was presented, the district court granted the City's plea except with regard to the unchallenged river-management-fee claims. The court severed the river-management-fee claims, making its dismissal of the other claims final. This appeal ensued.

## ANALYSIS

In a single issue, Appellants assert that the district court erred in granting the City's plea to the jurisdiction because they had sufficiently pled their standing to prosecute the claims at

issue, both individually and through STOP. In a subsidiary argument, Appellants urge that two of the Outfitter Plaintiffs that are riparian landowners—Rockin "R," which owns property on both the Comal and Guadalupe, and Texas Tubes, which owns property on the Comal—have standing to obtain a declaration as to whether these waterways are "navigable streams" under Texas law.

**Standard and scope of review**

A plea to the jurisdiction challenges a trial court's authority to decide a case. *See Miranda*, 133 S.W.3d at 225-26. Analysis of whether this authority exists begins with the plaintiff's live pleadings. *Id.* at 226. The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Whether the plaintiff met this burden is a question of law that we review de novo. *Id.* We construe the pleadings liberally and look to the pleader's intent. *Id.*

Ordinarily, if the pleadings do not contain sufficient facts to affirmatively demonstrate the district court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and we afford the plaintiffs the opportunity to amend. *Id.* at 226-27; *cf. id.* at 227 (if pleadings affirmatively negate existence of jurisdiction, then plea to the jurisdiction may be granted without allowing plaintiffs an opportunity to amend). However, where, as here, the plaintiffs have already been afforded an opportunity to amend in response to the trial court's granting of a plea to the jurisdiction, the plaintiffs are not entitled to replead yet again if we determine their pleadings still fail to invoke the trial court's jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 639-40 (Tex. 2004).

When resolving issues presented by the plea to the jurisdiction, we may consider evidence that the parties have submitted. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Here, neither party submitted evidence in connection with the City's plea, although Appellants did attach to their petition copies of the ordinances they challenged.

**General standing principles**

Standing, at least in a constitutional sense, is a component of the trial court's subject-matter jurisdiction. *See Texas Ass'n of Bus.*, 852 S.W.2d at 443-45.[4] The general test for constitutional standing in Texas courts is whether there is a "real" (i.e., justiciable) controversy between the parties that will actually be determined by the judicial declaration sought. *See id.* at 446. Constitutional standing is thus concerned not only with whether a justiciable controversy exists, but whether the particular plaintiff has a sufficient personal stake in the controversy to assure the presence of an actual controversy that the judicial declaration sought would resolve. *See Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998); *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996). The requirement thereby serves to safeguard the separation of powers by ensuring that the judiciary does not encroach upon the executive branch by rendering advisory opinions, decisions on abstract questions of law that do not bind the parties. *See Texas Ass'n of Bus.*, 852 S.W.2d at 444.

---

[4] *Cf. Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 9 n.16 (Tex. 2008) (observing that federal standing doctrine has both jurisdictional and prudential components and that "[t]his Court has not indicated whether standing is always a matter of subject-matter jurisdiction").

For a party to have standing to challenge a governmental action, as a general rule, it "must demonstrate a particularized interest in a conflict distinct from that sustained by the public at large." *South Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007); *see Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) ("Our decisions have always required a plaintiff to allege some injury distinct from that sustained by the public at large."); *Tri County Citizens Rights Org. v. Johnson*, 498 S.W.2d 227, 228-29 (Tex. Civ. App.—Austin 1973, writ ref'd n.r.e.) ("It is an established rule . . . that '. . . sufficiency of a plaintiff's interest (to maintain a lawsuit) comes into question when he intervenes in public affairs. When the plaintiff, as a private citizen, asserts a public, as distinguished from a private, right, and his complaint fails to show that the matters in dispute affect him differently from other citizens, he does not establish a justiciable interest.'") (quoting 1 Roy W. McDonald, *Texas Civil Practice* § 3.03, at 229 (rev. vol. 1965)). The United States Supreme Court, applying standing principles that are analogous to Texas standing jurisprudence at least with respect to challenges to governmental action, has explained that the "irreducible constitutional minimum" of standing consists of three elements:

(1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a 'legally protected' [or cognizable] interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical'";

(2) "there must be a causal connection between the injury and the conduct complained of"—the injury must be "fairly traceable" to the challenged action of the defendant and not the independent action of a third party not before the court; and

(3) it must be likely, and not merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see Brown*, 53 S.W.3d at 305 ("[W]e may look to the similar federal standing requirements for guidance."); *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, No. 03-04-00683-CV, ___ S.W.3d ___, 2010 Tex. App. LEXIS 1025, at *9-10 (Tex. App.—Austin Feb. 11, 2010, no pet. h.).[5] "Injury-in-fact," the cornerstone of these requirements, is conceptually distinct from the question of whether the plaintiff has incurred a *legal* injury—i.e., whether the plaintiff has a viable cause of action on the merits. *See Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984).[6] Similarly, the required infringement of a "legally protected interest" does not necessarily have to rise to the level of depriving the plaintiff of a "vested right" so as to violate due process. *See Coastal Habitat Alliance v. Public Util. Comm'n*, 294 S.W.3d 276, 287 (Tex. App.—Austin 2009, no pet.) ("Whether a plaintiff has standing in federal courts to assert a cause of action is not indicative of the deprivation of a vested property right."). Nonetheless, it remains that a plaintiff must show that it has or imminently will suffer an invasion of some legally cognizable interest that is sufficiently unique to the plaintiff, as distinguished from the general public, to ensure that the plaintiff has a sufficient personal stake in the controversy so that the lawsuit would not yield a mere advisory opinion or draw the judiciary into generalized policy disputes that are the province of the other branches. *Save Our Springs Alliance, Inc*, ___ S.W.3d ___, 2010 Tex. App. LEXIS 1025, at *8-24 (applying this requirement to hold that association members, who claimed environmental, scientific, and recreational interests in Barton Springs, but

---

[5] *See also* William V. Dorsaneo, *The Enigma of Standing Doctrine in Texas Courts*, 28 Tex. Rev. Litig. 35, 42-58 (2008) (observing that Texas courts have sometimes equated "standing" to bring common-law or statutory claim with existence of *legal* injury while applying standing principles in public-rights cases that resemble injury-in-fact test applied by federal courts).

[6] *See also* Dorsaneo, *supra* note 5, at 44-45.

no property interests affected by alleged pollution, had not established injury distinct from that of general public); *see also Lujan*, 504 U.S. at 560, 576-78 (discussing role of standing in preventing judicial incursions into legislative and executive spheres).

**Outfitter Plaintiffs**

The four Outfitter Plaintiffs assert that their live petition sufficiently alleges they are incurring particularized injury from the ordinances so as to confer standing to prosecute their claims. They emphasize their pleading allegations that each business is located in the City (such that it and its patrons are subject to the challenged ordinances) and that the ordinances:

> have a chilling effect on [the Outfitter] Plaintiffs' businesses in that they discourage tourists from visiting the Comal and Guadalupe Rivers and Plaintiffs are significantly harmed thereby. For example, Plaintiff Rockin' "R" River Rides has experienced a decrease in revenues attributable to the Ordinances in excess of $200,000.00 as measured between 2006 and 2007 sales to date. Other Outfitter Plaintiffs have experienced similar decreases in revenues. . . . [T]he unlawful and unreasonable ordinances that place . . . restrictions on the rental and use of tubes and ice chests within the Comal and Guadalupe Rivers within the City of New Braunfels has been extremely specific and unique, as well as particular impact on the Outfitters in that they are a limited number of business enterprises and employers that rent tubes and ice chests to the general public for use on public waterways. The substantial investment of the Outfitters, which is in excess of thousands of dollars per Outfitter, in the tubes, ice chests and associated products, which have become illegal to use within the public waterways, have taken the value of said personal property of the Outfitter Plaintiffs without due process, and in a manner which is totally unreasonable, arbitrary, and capricious. The regulation of the size of coolers which may be used (and specifically and particularly which the Outfitters can no longer rent) are uniquely causing harm to the Outfitter Plaintiffs.

The Outfitter Plaintiffs additionally plead, in a section of their petition titled "Special Injury and Particular Injury of Plaintiffs":

> Outfitter Plaintiffs also are suffering particular and unique injury from that of the general public in that they are being denied their ability to use their personal property, vis-a-vis ice chests and tubes, in the conducting of their business for rental purposes. The ownership of the personal property is a vested property right which has been arbitrarily, unreasonably, and capriciously restricted by Defendant, City of New Braunfels' enforcement of the Cooler and Container Ordinance in a manner that is unlawful and violates the relevant portions of the Alcoholic Beverage Code and Health and Safety Code cited above.

We observe that although the Outfitter Plaintiffs complain that the City has in some manner "restricted" their ability to rent tubes, ice chests, and unspecified "associated products" through the challenged ordinances, the sole *direct* restriction on them or their property they identify is the Cooler & Container Ordinance's prohibition against ice chests that exceed sixteen quarts in capacity. Liberally construing their pleadings, the Outfitter Plaintiffs allege they had invested in ice chests with larger capacities for purposes of renting them to tubers and that the Cooler & Container Ordinance subsequently banned those coolers from the portions of the Comal and Guadalupe within City limits. The pleadings, liberally construed, further allege that this restriction denuded those coolers of their value as property that can be rented to tubers wishing to tube within City limits. Further, the City acknowledges that the Outfitter Plaintiffs' allegations support the inference that they incurred additional expenses in purchasing smaller coolers complying with the ordinance to replace the non-compliant larger ones.

By alleging that the Cooler & Container Ordinance restricted their use of their property, caused them to incur additional expenses, and damaged or destroyed their market for larger cooler rentals within the City limits, the Outfitter Plaintiffs have demonstrated the required actual, concrete, and particularized infringement of their legally protected interests necessary for standing.

*See Texas Dep't of Ins. v. Reconveyance Servs.*, 240 S.W.3d 418, 437, 439 (Tex. App.—Austin 2007, pet. filed) (business had standing to challenge agency actions that it alleged destroyed market for its services in Texas); *Lake Medina Conserv. Soc'y v. Texas Natural Res. Conserv. Comm'n*, 980 S.W.2d 511, 516 (Tex. App.—Austin 1998, pet. denied) (association comprised of lakeside property owners and waterfront businesses had standing to challenge administrative action that would cause lake levels to drop); *Texas Rivers Prot. Ass'n v. Texas Natural Res. Conserv. Comm'n*, 910 S.W.2d 147, 151-52 (Tex. App.—Austin 1995, writ denied) (citing harm to canoe trip guides' "business opportunities" as supporting individual guides' standing to challenge agency action that would lower river levels); *see also National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 281-84 (6th Cir. 1997) (firearms manufacturers had standing to challenge weapons restrictions; observing that "courts have routinely found . . . a justiciable controversy when suit is brought by the plaintiff subject to a regulatory burden imposed by a statute"); *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 61 (9th Cir. 1994) ("It is well settled that a provider of goods or services has standing to challenge government regulations that directly affect its customers and restrict its market.") (citing cases). We likewise conclude that the Outfitter Plaintiffs have sufficiently alleged their injuries are "fairly traceable" to the Cooler & Container Ordinance and would likely be redressed by invalidating the cooler restriction (which would allow them to rent the larger coolers again). *See Lujan*, 504 U.S. at 560-61. Consequently, the Outfitter Plaintiffs have demonstrated standing to prosecute their claims seeking to invalidate the Cooler & Container Ordinance's ban on coolers exceeding sixteen quarts in capacity.

In contending otherwise, the City urges that the Outfitter Plaintiffs have not sufficiently pled a regulatory-taking claim and could not do so because the Cooler & Container Ordinance does not deprive them of all conceivable uses of the larger, non-compliant coolers. However, as we have noted, a plaintiff is not required to allege the deprivation of a "vested right" constituting a due-process violation to demonstrate the requisite infringement of a "legally protected interest." *Coastal Habitat Alliance*, 294 S.W.3d at 287; *see Texas Rivers Prot. Ass'n*, 910 S.W.2d at 151-52 (plaintiffs challenging agency actions that would cause river levels to drop were not required to demonstrate deprivation of "vested right" in river level to have standing; their riparian ownership and business interests in guiding canoe trips sufficiently distinguished their injury from public at large). The City similarly challenges whether the Outfitter Plaintiffs could prevail on the merits of their claims, but that issue in this case, again, is distinct from the threshold question of whether they have standing to advance those claims. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 554-55 (distinguishing threshold issue of standing from merits).

As for the other three challenged ordinances and the portions of the Cooler & Container Ordinance other than the cooler-size restriction (i.e., the ban on glass and Styrofoam containers, requirements for securing coolers, and the one-cooler-per-person limit), the Outfitter Plaintiffs have not pled any facts demonstrating injury from any direct restrictions on themselves or their property. Unlike the case with the cooler-size restrictions, there is no allegation that the Outfitter Plaintiffs sell or rent beer bongs, sell or rent containers with a volume capacity of less than five ounces, or that the outfitters own property that is subject to the Parks Ordinance's alcohol ban. Nor have the Outfitter Plaintiffs pled any facts demonstrating that the Cooler &

Container Ordinance's requirements for securing coolers have caused them to incur additional costs or replace existing coolers. Instead, based on their pleadings, the Outfitter Plaintiffs' injury, if any, must derive solely from a detrimental impact of these restrictions on the market for their rental tubes and ice chests.

As previously explained, government regulations that directly impact a plaintiff's customers and restrict its market can support standing. Nonetheless, as the U.S. Supreme Court has observed, where the "plaintiff's asserted injury arises from the government's allegedly unlawful regulation . . . of *someone else*, . . . . standing is not precluded, but is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562 (citations omitted). In such instances, "[t]he existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict,' and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such a manner as to produce causation and permit redressability of injury." *Id.* (citations omitted). The Outfitter Plaintiffs satisfied this standard with regard to the City's cooler-size restriction—they pled they owned larger, non-compliant coolers that they can no longer rent to their tubing customers because the customers are prohibited from using them within the City. They did not, however, sufficiently plead facts demonstrating injury from the other challenged restrictions.

The Outfitter Plaintiffs do not allege facts demonstrating that the citywide restriction against beer bongs, the prohibitions against containers less than five ounces in capacity or glass or Styrofoam containers in the rivers, the requirement that coolers be secured, or the ban on drinking

in public parks has caused them to incur a concrete and particularized injury. There is simply no causal linkage alleged that would demonstrate why or how a potential customer's inability to use a beer bong in the City, drink alcohol in a public park, and carry less-than-five-ounce open containers or glass bottles in the rivers, or the requirement that they secure their ice chests results in potential customers deciding not to rent inner tubes and ice chests from the Outfitter Plaintiffs when they would otherwise do so. Nor do the Outfitter Plaintiffs identify any injury they incurred from the one-cooler-per-person limit. Although they broadly complain of lost revenues they "attribute" to the ordinances collectively, these bare conclusions are insufficient to affirmatively demonstrate their standing. *See Miranda*, 133 S.W.3d at 226 (plaintiff has burden of alleging *facts* that affirmatively demonstrate trial court's subject-matter jurisdiction).

Ultimately, the Outfitter Plaintiffs rely on a broad allegation that the ordinances collectively "discourage tourists from visiting the Comal and Guadalupe Rivers." The general economic impact from a decrease in tourism would be one that the Outfitter Plaintiffs would share with other New Braunfels citizens. Such an injury is not sufficiently particularized and distinct from the public at large to confer standing. *See Lomas*, 223 S.W.3d at 307-08.

In the alternative, the Outfitter Plaintiffs argue that their pleadings demonstrate their standing as taxpayers to challenge the ordinances. Under a narrow exception to the standing requirement that a plaintiff show a particularized injury distinct from that suffered by the general public to challenge a governmental action, a taxpayer has standing to sue to enjoin the illegal expenditure of public funds without showing a distinct injury. *Bland*, 34 S.W.3d at 555-56. However, as the City points out, the Outfitter Plaintiffs have not sought to enjoin the

illegal expenditure of funds by the City. *See id.* at 556. Consequently, they cannot rely on the taxpayer-standing exception here.

In sum, the district court properly dismissed for lack of standing the Outfitter Plaintiffs' claims challenging the Beer Bong Ordinance, the Five-Ounce Container Ordinance, the Parks Ordinance, and the portions of the Cooler & Container Ordinance other than the cooler-size limitation. However, we conclude that the Outfitter Plaintiffs did demonstrate their standing to prosecute their claims challenging the cooler-size limitation. Furthermore, it follows from this holding that the Outfitter Plaintiffs likewise have standing to prosecute their claims for a declaration that the Comal and Guadalupe are navigable streams whose waters and riverbeds are owned by the State and held in trust for the people of the State. The City dismisses this claim as a "red herring," in the view that the question of the rivers' navigability is a mere abstract question of law unrelated to the parties' dispute concerning the ordinances. We disagree.

Appellants seek a declaration as to the rivers' navigability as a predicate to a declaration that the City "may not exert its police powers against the State of Texas or on the state-owned property consisting of the water and riverbeds of the Comal and Guadalupe Rivers as they flow through the City." Although the navigability issue might have been rendered moot if we had held that the Outfitter Plaintiffs lacked standing to challenge any of the ordinances, as the City suggests, we have instead concluded that the Outfitter Plaintifs have standing to challenge the Cooler & Container Ordinance's cooler-size restriction. Consequently, the issue of navigability

remains ripe and justiciable, and the Outfitter Plaintiffs have standing to assert their declaratory claim concerning that issue for the same reasons they have standing to challenge the cooler-size limitation.

**Williams**

In addition to the four Outfitter Plaintiffs, a fifth individual plaintiff, Stone Randall Williams, alleged that he was cited for violating the Cooler & Container Ordinance. Williams asserts that the prospect of a fine or sanctions for his alleged violation confers upon him standing to challenge the ordinance in this proceeding. The City responds that the district court lacked subject-matter jurisdiction over Williams's claims under *State v. Morales*, 869 S.W.2d 941 (Tex. 1994). In *Morales*, the Texas Supreme Court held that courts lack jurisdiction to grant injunctive or declaratory relief to restrain enforcement of a criminal statute unless the statute is unconstitutional and its enforcement will result in irreparable injury to vested property rights. *Id.* at 945, 947. As the City urges, Williams had no vested property right in carrying a cooler of a particular size into the Comal River or committing any of the other acts prohibited by the ordinance.[7] Consequently, the district court properly dismissed Williams's claims for want of subject-matter jurisdiction.

---

[7] Even though Lindsay Michelle Crim did not file a notice of appeal, Appellants argue—apparently as part of their efforts to demonstrate STOP's associational standing—that Crim had individual standing to challenge the Parks Ordinance because she received a citation for violating it. As with Williams, Crim's claims were properly dismissed under *Morales* because she had no vested right to possess alcoholic beverages in the City's parks.

**STOP**

Finally, we consider whether STOP has associational standing to assert the claims. An association has standing to sue on behalf of its members if: (1) its members would otherwise have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purposes; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Texas Ass'n of Bus*., 852 S.W.2d at 446-47 (adopting the test from *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)); *Hendee v. Dewhurst*, 228 S.W.3d 354, 382 (Tex. App.—Austin 2007, pet. denied). Each element of this test is satisfied with respect to the claims that the Outfitter Plaintiffs have standing to assert.

As for the first element, we have held that individual members of STOP—the Outfitter Plaintiffs—have standing to seek a declaration regarding the navigability of the Comal and Guadalupe Rivers and to assert the other claims to the extent they challenge the cooler-size restriction in the Cooler & Container Ordinance. Appellants do not allege additional facts that would demonstrate the individual standing of any other STOP members. Regarding the second element, the pleadings reflect that STOP's purpose—as suggested by its name, Stop The Ordinances Please—is to defeat or end the enforcement of the challenged ordinances. Finally, concerning the third element, STOP's claims do not require the participation of its individual members because it seeks only prospective declaratory and injunctive relief, raises only questions of law, and need not prove the individual circumstances of its members to obtain relief. *See Texas Ass'n of Bus.*, 852 S.W.2d at 448. We conclude that STOP has associational standing to prosecute the navigability claim and the claims challenging the cooler-size restriction.

## CONCLUSION

We reverse the district court's judgment dismissing STOP's and the Outfitter Plaintiffs' claims seeking a declaration that the Comal and Guadalupe Rivers are navigable and their claims challenging the Cooler & Container Ordinance's cooler-size restriction. We remand these claims to the district court for further proceedings. We otherwise affirm the judgment.

_______________________________________________

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop;
Chief Justice Law not participating

Affirmed in part; Reversed and Remanded in part

Filed: February 19, 2010