**Opinion issued October 15, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00025-CV

———————————

**DEE HOBBS, WILLIAMSON COUNTY ATTORNEY, Appellant**

**V.**

**DAN A. GATTIS, WILLIAMSON COUNTY JUDGE; TERRY COOK, CYNTHIA LONG, VALERIE COVEY, AND LARRY MADSEN, COUNTY COMMISSIONERS, Appellees**

---

**On Appeal from the 425th Judicial District Court**
**Williamson County, Texas[1]**
**Trial Court Case No. 18-0903-C425**

---

[1]     This appeal was transferred from the Court of Appeals for the Third District of Texas to this Court pursuant to its docket-equalization authority. *See* TEX. GOV'T CODE § 73.001 ("The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer."). We are unaware of any conflict between the precedent of the Court of Appeals for the Third District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

# MEMORANDUM OPINION

This is an appeal from the trial court's grant of a plea to the jurisdiction. Dee Hobbs, acting in his official capacity as the Williamson County Attorney, sued the Williamson County Judge and Williamson County Commissioners, all in their official capacities, seeking a declaratory judgment that certain policies and orders enacted by the Commissioners Court were void for exceeding the power of the Commissioners Court. In particular, Hobbs challenged a policy that limited the salary he could offer a newly hired or promoted employee.[2] The appellees, the county judge and county commissioners, filed a plea to the jurisdiction arguing that there was no justiciable controversy, noting that Williamson County was both a plaintiff and a defendant. The trial court granted the plea to the jurisdiction and dismissed the entire case.

On appeal, Hobbs argues that the trial court erred because: (1) his pleading alleged facts demonstrating the court's jurisdiction; (2) he has standing because the Government Code authorizes him to "fix" the salaries of his employees and there is a justiciable controversy because the actions of the Commissioners Court invade his core sphere of authority; and (3) the district court has supervisory jurisdiction over the Commissioners Court.

---

[2] Hobbs also challenged a policy that centralized information technology (IT) support. He has not, however, challenged on appeal the trial court's dismissal of that claim. *See* TEX. R. APP. P. 38.1.

We affirm.

## Background

Because this is an appeal from a trial court's ruling on a plea to the jurisdiction in which no jurisdictional evidence was provided, our recitation of the background comes from Hobbs's live pleading. The live pleading alleged the following facts.

10. The Williamson County Commissioners Court (hereinafter, "Commissioners Court" or "Defendants") annually adopts a budget for the fiscal operations of the County. Included in the annual budget are line item budgets for the set salaries of each approved position in the County departments and elected offices. These salaries are set within a pay range assigned to each position also approved by Commissioners Court.

11. Additionally, the Commissioners Court has adopted an Employee Policy Manual that is periodically revised and updated. The Employee Policy Manual includes policies regarding salary levels for newly hired employees and promotions and transfers of current employees.

12. The current version of the Employee Policy Manual, passed by Commissioners Court on May 29, 2018, includes significant changes and restraints on elected officials' use of budgeted salary funds. For example, the Policy limits the County Attorney's ability to fix the salary of a newly hired employee to only 25% above the minimum of the pay range for that position, not to exceed the amount currently budgeted for the position. Additionally, when a current employee is promoted to a position with a higher pay grade, the County Attorney's ability to fix the salary is again limited to only 25% above the minimum of the pay range for that position or 10% above the current salary, whichever is greater and without exceeding the amount currently budgeted for that position. While the Policy also provides that requests outside of the policies can be made with approval by the Commissioners Court; in practice, such requests are routinely denied

3

or not considered, not because the Commissioners Court did not find sufficient reason to exceed to salary limit, but simply because it violates the Policy.

13.     Now, Commissioners Court seeks to further limit the County Attorney's authority to perform his core functions by significantly lowering the 25% cap, thus continuing to restrict the County Attorney's ability and authority to recruit, retain, and fully utilize his employees to accomplish his constitutional and statutory duties.

14.     The current and proposed policies on salary limits affect not only the County Attorney, but all Williamson County elected officials, as the policies are applied to positions in all elected offices.

The appellees filed a plea to the jurisdiction and a general denial. They argued that Hobbs had no authority to bring suit in his official capacity, and that by doing so, Hobbs had cast Williamson County in the position of both plaintiff and defendant. The appellees argued that they did not invade his sphere of authority because his challenge related to a budgetary issue within the purview of the Commissioners Court. They also argued that the employee policy did not interfere with Hobbs's statutory right to fix the salaries of his employees because that statutory provision relates to proposing the salaries of employees for approval by the Commissioners Court.

The trial court held a non-evidentiary hearing and permitted the parties to make arguments and answer questions. The court later granted the plea, and Hobbs appealed.

**Analysis**

## I.     Legal standards

### A. Plea to the jurisdiction

A plea to the jurisdiction challenges a trial court's subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). A plea to the jurisdiction can challenge the plaintiff's pleadings alone or it can be accompanied or refuted by jurisdictional evidence. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012); *Miranda*, 133 S.W.3d at 227; *Gattis v. Duty*, 349 S.W.3d 193, 200 (Tex. App.—Austin 2011, no pet.). Where, as in this case, the plea to the jurisdiction does not challenge the existence of jurisdictional facts—and no party submits jurisdictional evidence to the court—the court's analysis relies on the plaintiff's pleading, which is construed "liberally, taking all factual assertions as true." *Heckman*, 369 S.W.3d at 150; *see Gattis*, 349 S.W.3d at 200. "Mere unsupported legal conclusions are insufficient." *Gattis*, 349 S.W.3d at 200. "If the pleadings fail to allege sufficient facts to affirmatively demonstrate the trial court's jurisdiction but also fail to affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend." *Id.* (citing *Miranda*, 133 S.W.3d at 226–27). "If, on the other hand, the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without

5

allowing the plaintiff an opportunity to amend." *Id.* (citing *Miranda*, 133 S.W.3d at 227).

On appeal, we review a trial court's ruling on a plea to the jurisdiction de novo. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019) (citing *Miranda*, 133 S.W.3d at 226).

**B. Subject matter jurisdiction**

"Subject matter jurisdiction is essential to the authority of a court to decide a case." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). "Subject matter jurisdiction requires that the party bringing the suit have standing, that there be a live controversy between the parties, and that the case be justiciable." *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994) (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 443). "If the district court lacks jurisdiction, in any of these senses, then its decision would not bind the parties." *Id.* A decision that does not bind the parties is a prohibited advisory opinion. *Id.*; *see Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam) ("Under article II, section 1 of the Texas Constitution, courts have no jurisdiction to issue advisory opinions."); *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998) ("The courts of this state are not empowered to give advisory opinions."); *see also* TEX. CONST. art. II, § 1 (separation of powers).

6

Standing "focuses on the question of who may bring an action." *Patterson*, 971 S.W.2d at 442. "A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it." *Heckman*, 369 S.W.3d at 150. Standing requires the existence of a controversy between the parties "at every stage of the legal proceedings," *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001), and "a justiciable injury that gives rise to a real controversy which judicial action can resolve." *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 591 (Tex. 2013) (citing *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 517–18 (Tex. 1995)); *see* TEX. CONST. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.").

The requirement that there be a live controversy requires a court to consider whether the claim alleged "uncertain or contingent future events that may not occur as anticipated or may not occur at all." *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 78 (Tex. 2015). A claim alleging only uncertain or contingent future events is not justiciable because the judicial relief sought will not resolve an actual controversy. *See Heckman*, 369 S.W.3d at 147; *Gomez*, 891 S.W.2d at 245.

## C. Declaratory judgment action

"A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bexar Metro. Water Dist. v. City of Bulverde*, 234 S.W.3d 126, 130 (Tex. App.—Austin 2007, no pet.); *see Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004); *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). "A declaratory judgment action does not vest a court with jurisdiction 'to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication.'" *Bexar Metro. Water Dist.*, 234 S.W.3d at 130 (quoting *Firemen's Ins. Co. v. Burch*, 442 S.W.2d 331, 333 (Tex. 1968)).

## II. Hobbs's live pleading did not allege a justiciable claim

In his live pleading, Hobbs alleged that the Williamson County Commissioners Court exceeded its authority by enacting policies and issuing orders that limited and restricted his use, as the county attorney, of funds that had been approved in the County budget. He further alleged that the Commissioners Court interfered with his ability to carry out his statutorily mandated duties and usurped his statutory authority to "fix the salaries" of his employees.

**A. Authority and role of the commissioners court**

A commissioners court is a county's principal governing body, with legislative, executive, administrative, and judicial functions. *Comm'rs Ct. v. Agan*, 940 S.W.2d 77, 79 (Tex. 1997). The Texas Constitution provides that a commissioners court "shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed." TEX. CONST. art. V, § 18(b). "In the exercise of its powers and jurisdiction over county business, [a] [c]ounty [c]ommissioners [c]ourt has implied authority to exercise broad discretion to accomplish the purposes intended." *Griffin v. Birkman*, 266 S.W.3d 189, 194–95 (Tex. App.—Austin 2008, pet. denied). "Constitutional and statutory provisions conferring authority upon [a] [c]ommissioners [c]ourt should be broadly and liberally construed to ascertain the scope of the authority granted either expressly or by necessary implication." *Id.* A commissioners court also has "specific statutory authority to oversee the fiscal operation of the county by approving and authorizing a budget." *Id.* (citing TEX. LOC. GOV'T CODE §§ 111.001–.095).

A commissioners court has broad discretion on budgetary decisions, and such decisions are ordinarily protected from judicial scrutiny by the separation of powers doctrine. *See* TEX. CONST. art. II, § 1. "The [budget] process is *political.* It combines inextricably the two legislative powers of 'taxation' and 'appropriation,'

the latter being a distribution and setting aside of parts of the total available revenue among the various government functions, operations, and programs." *Comm'rs Ct. v. Crim. Dist. Atty*, 690 S.W.2d 932, 934 (Tex. App.—Austin 1985, writ ref'd n.r.e.).

While a commissioners court enjoys broad discretion regarding budgetary concerns, its power is not unlimited; it is subject to certain review powers of the district court. *Griffin*, 266 S.W.3d at 195. In particular, a commissioners court and county officers may not interfere with or usurp the duties delegated by the Texas Constitution and by statutes to independent county officials and their employees. *Pritchard & Abbott v. McKenna*, 350 S.W.2d 333, 335 (Tex. 1961); *Harris Cty. v. Coats*, No. 14-17-00732-CV, 2020 WL 581184, at *8 (Tex. App.—Houston [14th Dist.] Feb. 6, 2020, no pet.); *Griffin*, 266 S.W.3d at 195.

**B.     Hobbs's live pleading did not demonstrate the existence of a live controversy or standing.**

**1.     No live controversy**

In his live pleading, Hobbs sought a declaration that the Commissioners Court's orders and policies restricting the use of budgeted salary funds when the county attorney hires a new employee or transfers or promotes an existing one were void as exceeding its authority. The live pleading described the policy expressed in the Employee Policy Manual. Hobbs did not allege that any particular dispute existed between him and the appellees. Instead, he alleged that the policies

"hamper[ed]" his ability "to manage and utilize the salary funds that have been previously approved and budgeted" "to attract, employ, and retain qualified individuals needed for these positions." The live pleading did not include any factual allegations that the employees or potential employees who would be willing to accept jobs possibly on the lower end of the stated salary range were incompetent to carry out the assigned or delegated functions of the county attorney's office. There were also no factual allegations that potential employees who were competent to do the work were unwilling to accept the jobs when offered a salary near the lower end of the salary range. And there were no factual allegations indicating that the county attorney has been unable to perform required duties because desired candidates refused the offer to work at the lower end of the pay scale and the Commissioners Court rejected a request to offer a salary in the budgeted amount. Instead, the live pleading alleged that the policies could create a problem or hamper the effectiveness of the county attorney at a hypothetical future time. This is an allegation of an uncertain or contingent future controversy, not an allegation of a live controversy. *See Heckman*, 369 S.W.3d at 147; *Gomez*, 891 S.W.2d at 245.

2. **No standing**

In addition to not alleging a live controversy, the pleading does not allege facts showing that, in his official capacity, Hobbs suffered a distinct and

11

individuated injury. *See Gattis*, 349 S.W.3d at 202. Hobbs has argued that the policy limiting employee salaries would prevent him from hiring competent, qualified employees to help him fulfill his statutory duties. When acting in his official capacity as the county attorney, Hobbs represents Williamson County. Therefore, to the extent that an injury as alleged could be shown, the injured party would be the county itself, not Hobbs. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007) (suits against a governmental official in his official capacity are suits against the governmental entity against whom liability is sought not against the official personally). Hobbs has not shown that he, as county attorney, "has or imminently will suffer an invasion of some legally cognizable interest that is sufficiently unique" to him and that will ensure he has "a sufficient personal stake in the controversy so that the lawsuit would not yield a mere advisory opinion or draw the judiciary into generalized policy disputes that are the province of other branches." *Stop the Ordinances Please v. City of New Braunfels*, 306 S.W.3d 919, 927 (Tex. App.—Austin 2010, no pet.).

To the contrary, Hobbs acknowledged in his pleading that the county attorney has no individual stake differing from that of other Williamson County elected officials. Accordingly, we hold that Hobbs, acting in his official capacity, lacked standing to seek a declaratory judgment as pleaded in this case. Because

there is no live controversy and no standing, this case is not justiciable. *See Norwood*, 418 S.W.3d at 590–91; *Garcia*, 893 S.W.2d at 517–18.

## III. The district court does not have supervisory jurisdiction over this case.

Hobbs also argues that he has invoked the district court's supervisory jurisdiction over the Commissioners Court. The Texas Constitution provides: "The District Court shall have appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law." TEX. CONST. art. V, § 8; *see Agan*, 940 S.W.2d at 80.

"A party can invoke the district court's constitutional supervisory control over a [c]ommissioners [c]ourt judgment only when the [c]ommissioners [c]ourt acts beyond its jurisdiction or clearly abuses the discretion conferred upon the [c]ommissioners [c]ourt by law." *Agan*, 940 S.W.2d at 80; *accord Ector Cty. v. Stringer*, 843 S.W.2d 477, 479 (Tex. 1992). "If [a] [c]ommissioners [c]ourt acts illegally, unreasonably, or arbitrarily, a district court may so adjudge." *Agan*, 940 S.W.2d at 80. However, a district court may not substitute its discretion for that of a commissioners court. *Id.*; *Ector Cty.*, 843 S.W.2d at 479. A commissioners court can act illegally, unreasonably, or arbitrarily by acting contrary to a legal delegation of power or limitation on its own powers or by exercising powers that have been delegated to another county officer by the Texas Constitution or by

13

statute. *See Pritchard & Abbott*, 350 S.W.2d at 335; *Gattis*, 349 S.W.3d at 198–203; *Griffin*, 266 S.W.3d at 197. Hobbs argues that the Commissioners Court both invaded his sphere of authority and exceeded its own authority.

## 1. The pleading does not establish that the challenged policy and orders invade Hobbs's sphere of authority.

Although Hobbs acknowledges the Commissioners Court's power to make the county's budget, he contends that his sphere of authority includes the right to set his employees' salaries. Section 41.106 of the Texas Government Code provides: "A prosecuting attorney shall fix the salaries of his assistant prosecuting attorneys, investigators, secretaries, and other office personnel, subject to the approval of the commissioners court of the county or counties composing the district." TEX. GOV'T CODE § 41.106(a). However, analyzing an earlier and identical statutory provision, the Austin Court of Appeals has held that the prosecuting attorney's authority to "fix the salaries" of his employees means only that he has the power to determine the salaries of his employees for inclusion in the county's proposed budget, which may be revised by a commissioners court before approval. *See Comm'rs Ct.*, 690 S.W.2d at 938–39. The court of appeals explained that viewing the duty to "fix" salaries as conferring unilateral authority to the prosecuting attorney would render this expenditure "not realistically subject to the public debate, the political-adjustment process, the public interest evaluation, the taxpayer-interest consideration, and the mandatory correlation of our county

14

revenue and expenditure estimates that comprise the legislative process."[3] *Id.* at 938.

We conclude that, considering the broad budgetary discretion afforded to the Commissioners Court and the limited authority delegated to the prosecuting attorney to fix his employees' salaries, the pleading does not allege an interference with the county attorney's authority sufficient to invoke supervisory jurisdiction. *See id.* at 934.

**2. The pleading does not demonstrate that the Commissioners Court exceeded its authority by implicitly amending the budget in a manner contrary to law.**

Hobbs also argues that he invoked the district court's supervisory jurisdiction by pleading that the Commissioners Court's policies effectively amended the annual budget.

---

[3] The court of appeals explained why viewing the authority to fix salaries as unilaterally belonging to a prosecuting attorney would be "prejudicial to the public interest." The court of appeals opined:

> Of what use are public hearings, public debate, and so forth if the amounts "fixed" by the prosecuting attorney are not open to change by the only body authorized to raise the revenue to pay them and make the other legislative determinations referred to above? If they are not open to change, there is no practical reason for them to be discussed or subjected to the political and legislative process. They are outside such process and the result of dictation by a single officer of the executive branch, an anomaly in any governmental budget-making process.

*Comm'rs Ct. v. Crim. Dist. Atty.*, 690 S.W.2d 932, 938 (Tex. App.—Austin 1985, writ ref'd n.r.e.).

The Local Government Code authorizes a commissioners court to adopt an annual county budget. *See* TEX. LOCAL GOV'T CODE §§ 111.001–.096. When adopting a budget, a commissioners court "shall set the compensation, office and travel expenses, and all other allowances for county and precinct officers and employees who are paid wholly from county funds." *Id.* § 152.011; *see generally id.* §§ 152.011–.907 (Amount of Compensation, Expenses, and Allowances of County Officers and Employees). "After final approval of the budget, a commissioners court may spend county funds only in strict compliance with the budget, except in an emergency." *Id.* § 111.010. However, a commissioners court is nevertheless authorized to make "changes in the budget for county purposes."[4] *Id.* § 111.011.

---

[4]     Section 111.011 has been cited only once. *See Bexar Cty. v. Hatley*, 150 S.W.2d 980 (Tex. 1941). In *Hatley*, the commissioners court adopted a budget with sums for voting by hand marked and counted ballots. *Id.* at 981. The commissioners court later amended its budget to allow the rental of voting machines with an option to purchase. *Id.* at 982–84. A group of taxpayers sued to for an injunction to restrain compliance with the rental contract. *Id.* at 984. The trial court denied the injunction and the court of appeals reversed. *Id.* at 985.

On appeal, the Texas Supreme Court took up the question of whether the commissioners court proceeded lawfully in amending its original budget. *Id.* at 987. Statutes in effect at the time mirrored those in effect now and provided that once the budget has been adopted by a commissioners court, expenditures were to be made "in strict compliance with the budget as adopted" except in the case of emergency expenditures. *Id.* at 986. Likewise, the statute provided that nothing within it prevented a commissioners court from "making changes in the budget for county purposes." *Id.*

In this case, Hobbs argues that the employee policies enacted by the Commissioners Court effectively amended the budget in the absence of an emergency and in contravention of the regular budget adoption and amendment process. He relies on a letter opinion from the attorney general, which asked whether a county official has the authority to close his office on account of bad weather or other extenuating circumstances, and if so, whether the county treasurer or auditor could withhold payment of employees salary due to the closure of the office. Tex. Att'y Gen. Op. No. JC-0131 (1999). In that letter opinion, the attorney general concluded that the authority of a commissioners court to set county compensation did not include the authority to set the office hours for other county officials and their employees. *Id.* However, the attorney general also concluded that "once the salaries of county officers and employees are set, the salaries may not be reduced, outside of the regular budget adoption and amendment process, to account for office closures." *Id.*

Unlike the question posed in the attorney general's letter opinion, the challenged policies here did not reduce the salaries of county officers and

The Supreme Court held that the commissioners court did not act unlawfully by amending its budget because the statutes provided "some latitude" to make the budget plan workable, the subject matter of the amendment (elections) was "an absolute public necessity," and the amendment did not require the expenditure of funds not already budgeted for elections. *Id.* at 987. Thus, the Supreme Court reversed the court of appeals and affirmed the trial court's denial of a temporary injunction. *Id.* at 989.

employees in response to the county attorney's exercise of discretion in the management of his office's functions. Moreover, the challenged policies did not actually amend the budget. Because the policy permits exceptions to the salary cap with approval by the Commissioners Court, the challenged policy does not necessarily reduce any employee salary as compared to the amount adopted in the budget.

We conclude that the pleading does not allege a violation of the statutory budgeting process sufficient to invoke the district court's supervisory jurisdiction. *See Comm'rs Ct.*, 690 S.W.2d at 934.

## Conclusion

Having concluded that Hobbs lacks standing, that the pleading does not allege a justiciable injury, and that the facts alleged in the live pleading do not invoke the trial court's supervisory jurisdiction, we affirm the judgment of the trial court.


Peter Kelly
Justice

Panel consists of Justices Kelly, Goodman, and Countiss.